## Harris v. Commonwealth.

(Decided February 7, 1919.)

### Appeal from Mason Circuit Court.

1. Criminal Law—Defense of Insanity.—Testimony by defendant that he did not consciously kill his victim, against whom it is proven without contradiction he entertained malice or ill will, is of probative value only in support of the defense of insanity to show the absence of any motive whatever, but has no probative value to show the absence of malice merely of a sane person.

2. Homicide—Drunkenness—Evidence.—Evidence of drunkenness upon the part of one accused of murder, even where malice is proven, is admissible as part of the res gesta, for consideration of the jury in determining whether the punishment should be death or only life imprisonment, but it can not reduce murder to manslaughter where pre-existent malice toward the deceased is proven, and may have that effect only where there is no proof, but merely a legal presumption, of malice.

3. Homicide—Drunkenness—Evidence.—An instruction upon manslaughter is not authorized by evidence of drunkenness upon the part of the defendant who killed without justification one against whom he is conclusively proven to have entertained a settled ill will or malice.

A. D. COLE, H. W. COLE and J. G. WADSWORTH for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an appeal from a judgment imposing upon appellant the death penalty for murdering his wife, from whom he had been separated for about two months, and who, about three weeks previous to the homicide, had him arrested and fined in the police court for "beating her up."

The homicide by defendant, thoroughly established and brutally committed, is not denied, or its justification attempted by him in his testimony, his only defense being

that from insanity or drunkenness or both, he did not knowingly do it, and had no recollection or knowledge of what he did that day from more than an hour before the killing until some six or seven hours thereafter.

The court gave instructions upon murder and insanity, but did not instruct upon manslaughter. It is insisted that the failure to instruct upon manslaughter was prejudicial error, and this is the chief reliance for a reversal, although the instructions upon insanity are criticised, and we shall first dispose of these criticisms.

1. The two instructions given submitting the defense of insanity are literal and exact copies of the instructions set out in full and approved by this court in Mathley v. Commonwealth, 120 Ky. 389, and numerous cases therein cited, as well as in Hobson's Instructions, sec. 720, with the single exception that the name of the deceased is changed, so that we do not feel that it is necessary or proper to copy or discuss them in this opinion. No objection is urged against them now that has not been considered and held without merit heretofore by this court, unless it be that it is error to refer to the *shooting* by the defendant as the *killing,* which objection so far as we have noticed has not been urged against them until now, but the criticism is entirely without merit because death was instantaneous, and there is no substantial difference under such state of case in the meaning of the two terms.

2. The question of whether or not the court should have given an instruction upon the question of manslaughter, is much more serious and requires, preliminary to its decision, a consideration of the probative value of evidence upon the question of drunkenness, as affecting defendant's motive in killing his wife.

This evidence is divisible into three separate and distinct classes: (a) evidence by the Commonwealth of pre-existent and premeditated malice; (b) evidence by defendant and his mother as to his insanity at the time he killed his wife, and (c) evidence by the defendant and others that at the time of the homicide he was under the influence of intoxicants voluntarily consumed. In connection with the two latter classes, and possibly as a part of each, is the testimony of defendant that he did not know he had killed his wife until told of it some six hours thereafter, and that he did not remember doing it or

anything else done by him for some time previous and subsequent to the killing.

It was proven by the Commonwealth that for some two months or more his wife had not lived with defendant; that she had frequently after the separation complained to the police about his annoyance of and behavior toward her and had him arrested about three weeks before the killing for "beating her up," for which he was fined; that on the afternoon of the killing, which occurred at about seven o'clock in the evening, defendant purchased cartridges for his pistol with which he killed her; that about an hour before the killing he was seen at the L. & N. depot, just across from and in sight of where his wife worked; that at the place of and just before the killing he and his wife were engaged in a conversation; that he shot her several times without apparent cause, went away and returning in a few minutes fired several more shots into her lifeless body; that in about an hour thereafter he returned to the same store where he had in the afternoon purchased ammunition for his pistol and bought more, remarking that he might as well have bought the whole box at the start; that about an hour later he shot but did not kill, Moreland Walker, with whom he had been on friendly terms for some five years, but with whom he had previously had some trivial difficulty; that Walker, after the killing of defendant's wife, had accompanied a police officer in a search for defendant and had left the officer but a few minutes before defendant shot him, without any apparent reason for so doing; that defendant, when found and arrested, at about one o'clock the next morning, was at his home in bed, and when arrested said to the officers arresting him, and in the presence of William Tolle, that he had accomplished what he wanted to do in killing his wife and shooting Walker, and was ready to abide the consequences. It will be noticed this evidence establishes every element of murder, including positive proof of malice preconceived and diabolically executed.

As an absolute defense there was some evidence, properly submitted, and necessitating his acquittal if believed by the jury, that the defendant was insane and therefore wholly irresponsible for the homicide. Thus far there is no trouble, but the Commonwealth contends the killing was either that of a sane person and the crime was murder, or of an insane person and there was no

crime, and these were the only issues triable by the jury, while for the defendant it is contended that the third class of evidence to the effect that defendant was intoxicated, which, accompanied with his statement that he had no purpose to kill his wife, that he did not consciously do it and had consumed nearly a quart of whiskey before doing it, was evidence which, if true, reduced the crime to manslaughter and imposed upon the trial court the duty of giving an instruction upon that lessor degree of the crime charged.

It is the province of the court of course to determine whether or not there is any evidence to support any particular theory of a case. Helm v. Commonwealth, 156 Ky. 751, and in so doing to reject as of no probative value a statement of alleged facts inherently impossible and absolutely at variance with well established and universally recognized laws. L. & N. R. Co. v. Chambers, 165 Ky. 703.

Of course, we do not know just what was defendant's theory as he did not have to state it, but his statement that he did not know or remember what he had done in connection with evidence of a disposition toward insanity, unquestionably was of some probative value to support a theory of insanity, and was so treated by the trial court. But was such statement in connection with some evidence he was drunk, but still able to go where he wished and do what he wanted to do in many respects, any evidence whatever of a lack of motive in selecting out of all the people in the city of Maysville, the object of his proven, and not denied, ill will? In other words, he may have been insane, on his evidence, and, impelled by an insane and uncontrollable mania, gone about its execution, even with reference to a particular individual and in an apparently sane way, without any responsible motive, but if not insane, could he lay in wait for the person against whom the evidence shows he had ill will pre-existing and independent of any state of intoxication, patiently await for nearly an hour her arrival upon the street and then, after walking with her a short distance, shoot her down without justification of any kind, without having a motive? Is that humanly possible? Is not his statement that he did not know what he was doing (unless he was insane) a statement of alleged facts inherently impossible and absolutely at variance with well established and universally recognized laws of nature? Can a sane man

who, though intoxicated, is still able to go about, transact ordinary business affairs, such as buying ammunition for his pistol, seek out the object of his proven ill will, slay her and then demand of the courts that they shall accord to his statement he didn't know what he was doing when he killed the object of his hatred, and had no motive in doing so, any probative value? If so, then the statement of a drunken man is of more effect than of a sober man. Of course if a sober or drunken man gave a reasonable or even a remotely possible explanation of the alleged shooting such as that he did not do it, or did it in his necessary self-defense, or by accident, or in sudden heat and passion, such a statement under proper instructions would be for the jury to weigh, but a statement from a sober man that he didn't know what he was doing when he killed another, it seems clear, could only be submitted for the jury's consideration, that is, accorded probative value, under the theory he was insane, since under no other hypothesis could it have probative value because inherently impossible and absolutely at variance with every law of psychology and human experience. We therefore conclude defendant's testimony of no consciousness of the killing was given its full and only value in insanity instruction.

2. Drunkenness was at common law no excuse or of any benefit whatever to one accused of homicide, and it is everywhere written in the law of today that it is no excuse for or palliation of crime (13 R. C. L. 715). Yet its use as a defense where motive is an essential ingredient of a crime, is permitted quite generally in a very confused and ununiform way, purely as a result of judicial effort to reduce the harsh rigor of the common law rule to accord more nearly with reason and human experience, and as a consequence upon trial for murder, drunkenness as affecting motive is admitted as a *pro tanto* defense, but as this ameliorated rule has no support except judicial reasoning, it logically must be limited by reason and ought to be applied only as logic supports its application.

Reason and human experience possibly justify the injection of drunkenness to show an absence of motive, under certain circumstances, as where a man kills a friend or a stranger, rationally explainable only as the result either of a presumed malice against mankind, or from a drunken state that suggests no motive at all, but this

certainly is the limit of its reasonable applicaton. Where a man though drunk hunts down and kills, not at random, but his enemy, drunkenness explains nothing not perfectly comprehensible under the ordinary laws of human conduct. The very fact of selection destroys utterly any reasonable deduction of a want of motive or of any motive but malice, and the selection is explained beyond a reasonable doubt by the normal state of mind, not in any sense dependent upon or affected by intoxication; there is left no possible place for any consideration or speculation as to the effect upon the mind of the intoxicant. It did not cause or deter or alter the pre-existent motive; its only possible effect, if any, was upon the nerve or the prudence, and being voluntarily assumed is no excuse for a superabundance of nerve or the lack of prudence. It therefore follows necessarily it can only have weight where there is no other explanation of an act otherwise incomprehensible to human understanding in the light of human experience. Consequently it is the established rule in this state and elsewhere that where one with a proven premeditated determination arms himself and takes intoxicants as a part of his preparation for homicide, his drunkenness is of no weight to explain away the malice. Marshall v. Commonwealth, 141 Ky. 222, and equally impotent is the added statement of a sane person of ignorance of having killed an enemy, the only factor present here but absent in the Marshall case.

In the case of Bishop v. Commonwealth, 109 Ky. 558, relied upon by appellant, the killing of an unknown man was unexplainable upon any other hypothesis than a drunken want of motive or malice against the whole race, and there a manslaughter instruction was warranted if the reason is sound that permits drunkenness in any case to assist in explaining crime, but not so in the case at bar and numbers of cases in which it has been mistakenly permitted to have a part in determining the quality of the crime. Drunkenness is a state of varying degrees and hard to define, and certainly does not have probative value to contradict or overcome even the malice presumed from an unjustified homicide, unless in a degree that negatives any motive, and such a state surely is not reached when the defendant is capable of and makes an accurate selection, in accordance with proven pre-existent malice or ill will.

The cases in this state and elsewhere upon this question are so numerous as to prevent any attempt at a detailed consideration of the facts of each case, which would have to be done to determine whether on account of drunkenness an instruction upon manslaughter should have been given, so we shall content ourselves with a reference to the fact that the subject has been much confused as a result of a failure to confine manslaughter charges because of drunkenness to such cases only as it afforded reasonable evidence of a lack of motive, and the unwarranted assumption it should be so treated under all circumstances. It is quite generally the rule in states where by statute murder is divided into degrees to permit evidence of drunkenness upon the question of the extent of the malice, as affecting only the question of murder in the first or second degree, malice being of the essence of both degrees, but in such states, it is not allowed to reduce murder to manslaughter, 13 R. C. L. 720; that is, it can not rebut malice but merely explains its degree. That is a much harsher rule than the one we are announcing because we recognize its potency to rebut a mere legal presumption of malice but deny its efficacy to put in issue uncontradicted pre-existent ill will or malice.

An erroneous assumption of some courts and annotators is that where murder is not divided into first and second degrees, evidence of drunkenness is admissible to show want of malice, and Shannahan v. Commonwealth, 8 Bush (Ky.) 463, is quite generally cited as so holding, which is not its proper interpretation, as we think we can demonstrate; but such is not the province of such evidence, as is recognized where murder is by statute divided into degrees, which has not been done formally in this state, although such is the practical effect of the two penalties prescribed, life imprisonment or death.

The true province of such evidence, which is admissible as a part of the *res gesta,* is to assist the jury in fixing the punishment in accordance with the extent voluntary drunkenness, considered a human frailty, influenced the perpetration of the malicious crime, at death or life imprisonment, but not to rebut malice and reduce the crime to manslaughter.

In the Shannahan case a manslaughter instruction was given and the judgment was affirmed, so the question of whether or not such an instruction was justified was not directly involved on the appeal; however, the opin-

ion shows the defendant while drunk killed his friend without apparent reason or justification, and the court, although not called upon to decide the question, was on the facts justified purely by way of *obiter* in making the very guarded statement with reference to an unobjectionable manslaughter instruction offered by the defendant:

"In the opinion of this court *if drunkenness can be pleaded in excuse for crime or by way of mitigating the punishment on account of crime,* we perceive no valid reason for withholding from the consideration of the jury such an instruction as asked for by the counsel for the appellant in a case like this."

After making this statement, the court proceeds to discuss the wisdom of the relaxation of the common law rule saying:

"By the statute law of Kentucky drunkenness is made an offense for which a penalty may be imposed; and, although drunkenness is in violaton of good morals as well as the law of the land, it may be proper, out of charity to the passions of men and their inability to control in many instances either their passions or appetities, not to adhere to the rigorous rule of the common law, and add to the punishment of a party who by committing a penal offense places himself in such a condition as causes him to commit a still greater offense. But while we sanction this modification of the common law doctrine, we are well satisfied that neither the interests of society nor the wisdom and justice of law requires or authorizes the judicial tribunals of the country to establish the legal principle that the violation of one law, resulting in inflaming and exciting the worst passions of men, shall be deemed a sufficient cause for mitigating the punishment to be inflicted upon those who commit great crimes.

"But, on the contrary, men of violent passions and wicked designs would avail themselves of this very principle of law, by becoming drunk in order to take the lives of their fellow men, with the consciousness on the part of the offender that his drunkenness would be the mitigating feature of his case. The recognition of such a rule of law is but an invitation to men of reckless habits to commit crime; and while their punishment is by incarceration only in the state prison for a few years, the sober man, whose cause for revenge and the desire to take human life therefor is kept within his own breast, for the commission of a like offense is made to suffer death.

*There is no reason or philosophy in a law that would hang the sober man for murder, and lessen the punishment of the man intoxicated for the same offense, because the latter had voluntarily placed himself in a condition by which he is induced to take human life. . . .*

"The proper rule is, that one in a state of voluntary intoxication is subject to the same rule of conduct, and to the same rules and principles of law, that a sober man is; and that where a provocation is offered, and the one offering it is killed, if it mitigates the offense of the man drunk, it should also mitigate the offense of the man sober."

Although this case has been accepted as a leading case supporting the doctrine that evidence of drunkenness necessitates in all cases a manslaughter charge, we confidently assert it not only does not so hold, but is in exact harmony with what we are holding now.

This case, we find, has been cited so many times, we can not undertake an examination of all these cases to see whether or not the rule has ever been enlarged to the extent of reversing a case because of a failure to instruct upon manslaughter under evidence such as we are considering. No such case is cited by appellant, but if so we would not be willing to be bound by it.

Before closing this already too lengthy opinion, we need only call attention to the fact that there was no evidence whatever warranting an instruction based upon involuntary manslaughter, to which counsel for defendant contends he was entitled, and we desire to also call attention to the fact that the jury after hearing all of the evidence offered by defendant as to his being drunk, were not sufficiently impressed therewith to reduce his punishment, to life imprisonment as they were authorized to do, which we have seen was the only consideration to which such evidence was entitled. Hence the court did not err in refusing the manslaughter charge upon the evidence of defendant's intoxication, nor upon his statement of no knowledge, for the latter was given its only reasonable consideration in the insanity charge.

Wherefore the judgment is affirmed, the whole court sitting.