## Dillard Todd and Dewey Todd v. Commonwealth.

(Decided June 16, 1922.)

### Appeal from Madison Circuit Court.

1. Criminal Law—New Trial—Newly Discovered Evidence.—Newly discovered evidence does not authorize a new trial where there is no showing that it had been discovered since the trial or of diligence to discover it before trial.

2. Criminal Law—Excessive Verdict.—A verdict finding the defendant guilty and fixing his punishment within the limits prescribed by law for the crime, is not excessive.

3. Criminal Law—Evidence—Probative Value.—Evidence for the Commonwealth, which if true proves the defendant guilty of the crime charged but which is at variance with human experience, is of but little probative value and held insufficient by itself when contradicted by the evidence of four witnesses, all the facts and circumstances and reasonable inference deducible therefrom, to support the conviction of a felony of defendants, who prove their good reputation, which is not denied.

R. C. OLDHAM for appellants.

CHAS. I. DAWSON, Attorney General, and THOMAS B. Mc-GREGOR, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellants were convicted of stealing chickens of the value of more than $2.00, and their punishment fixed at confinement in the penitentiary for four years.

It is first insisted for reversal that the court erred in refusing a new trial on the ground of newly discovered evidence, but there is no merit in this contention for the simple reason that there was absolutely no showing whatever of any diligence upon the part of the defendants with reference thereto. Neither of them even so much as made an affidavit alleging that they did not know of this evidence as well before as after the trial.

The next insistence, that the verdict is excessive, is equally without merit, since the statute provides for imprisonment in the penitentiary of a person guilty of the offense for not less than one nor more than five years, and obviously we could not say that a verdict of guilt, fixing the punishment within such limits, was excessive.

We think that what counsel really intended by the argument presented under this head is that the verdict finding the defendants guilty was not supported by the evidence, and this contention, assigned as one of the grounds for a new trial, we are convinced should be sustained.

The only witness for the Commonwealth, Owen Yates, testified that at about 2 o'clock one night during the summer of 1921, he heard some cattle in his cornfield and some noise about his chickens; that he got up and went out to see what the trouble was and saw the two defendants, each holding one end of a fence rail upon which were some chickens of his worth more than $2.00, and that defendants were then in plain view of and within twenty feet of him; that a wagon was left on the road in front of his house and that there was some blood and chicken feathers in it.

On cross-examination, he denied that he told Owen Hensley the next morning, when asking him who owned the wagon, that he did not know who got his chickens and was not sure that he missed any, but he did not deny that he asked Hensley who owned the wagon or claim to have told him who stole his chickens.

Defendants each denied stealing any chickens from Yates or any one else, and testified that they had borrowed the wagon from Mr. Hensley to go to Speedwell and left

home with it about dark; that a tire came off of the wagon on the road and that after trying to fix it several times, they finally left the wagon in front of Yates' house, at about 2 o'clock in the morning.

Mr. Hensley testified that he loaned the wagon to the defendants and that upon the same day a relative of his had laid a freshly killed beef in it; that he kept the wagon near his barn and that his chickens roosted in and on it. He further testified that the next morning Yates asked him to whom he had loaned the wagon, and said that he heard a noise about his chickens during the night but did not see anybody or know who got his chickens, but suspected that whoever had borrowed the wagon was guilty. He also testified that he knew the defendants' reputation and that it was good.

Defendants' father testified that they got home about 2 o'clock in the morning and that they did not have any chickens when they reached home.

The credibility of witnesses is nearly always a question for the jury, but Yates' version of this alleged theft is so very remarkable and unnatural as to have but little, if any, probative force, and certainly it alone ought not to be permitted to send to the penitentiary these two colored boys of proven and undenied good repute, whose denial of guilt is supported by the evidence of their father and a disinterested neighbor, and all the proven facts and circumstances and every reasonable inference deducible therefrom. See L. & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041; Harris v. Commonwealth, 183 Ky. 542, 209 S. W. 509.

If Yates had seen the defendants and was within twenty feet of them when they were stealing his chickens, as he testified, it is utterly inconceivable why he said nothing to them, did nothing to stop them, went back to bed and the next morning went to Hensley to find out who had his wagon the night before; and that, as seems to have been the case, he took no action against the defendants until late in October when he appeared before the grand jury and indicted them. And it is almost as inconceivable that the defendants would have stolen the chickens and left a wagon they had borrowed from a neighbor in the road at the very place where the crime was committed.

It is with reluctance, and only in exceptional cases, that this court will reverse a conviction upon the ground

that the verdict is flagrantly against the evidence, but we are convinced that simple justice demands such action upon our part in this case.

Wherefore the judgment is reversed and the cause remanded for a new trial.