# Graham v. Commonwealth.

(Decided June 22, 1923.)

## Appeal from Boyle Circuit Court.

1. Criminal Law—Affidavits Held Not to Show Abuse of Discretion in Denying Change of Venue for Prejudice.—Where defendant's motion for change of venue because of prejudice in the county was supported by the joint affidavit of six persons, whose occupation or business was not mentioned, and the response of the Commonwealth was supported by joint affidavit of five persons, two of whom were farmers and the others merchants, and all of whom stated defendants could have a fair trial, there was no abuse of discretion in denying the motion for change of venue.

2. Criminal Law—Denial of Change of Venue Not Reviewed Unless Discretion was Abused.—The overruling of a motion for a change of venue, or the selection of the county to which the cause is transferred when a change of venue is granted, will not be reviewed on appeal unless there clearly appears to have been an abuse by the trial court of its discretion.

3. Criminal Law—Affidavits for Continuance Held Not to Show Lack of Time for Preparation.—Where affidavits in support of motion for continuance of a prosecution of three defendants for murder were filed by their counsel, stating generally that they had not had sufficient time to examine the indictment or prepare for the defense, but it appeared that the attorney for the appealing defendant had represented him at the examining trial a month before he was indicted, and had opportunity to consult with him in the meantime, and that the trial was set for a date three days after the indictment was found, which was ample time to enable counsel to inform himself as to the charge in the indictment, the showing was insufficient to entitle accused to a continuance, and the trial was properly held at the term at which the indictment was found, as permitted by Criminal Code of Practice, section 185.

4. Criminal Law—Failure of Stenographer to Furnish Copy of Evidence at Examining Trial Held Not to Require Continuance.— Defendants were not entitled to a continuance for the failure of the court stenographer to furnish their counsel with a copy of the evidence heard at the examining trial as requested by one of the counsel, where the stenographer made an affidavit, which was uncontradicted, that the only request made to her for a copy of the evidence was a request for a carbon copy of the evidence in the event that the Commonwealth should order a transcript of the evidence, and that the Commonwealth did not order any transcript.

5. Criminal Law—Granting or Refusing Continuance is Within Discretion of Trial Court.—The granting or refusing of a continuance in a criminal as in a civil case is within the sound discretion of

the trial court, and, in the absence of abuse of such discretion, the court's ruling will not, on appeal, be declared reversible error.

6. Homicide—Requested Instruction on Effect of Intoxication Preventing Intention Held Erroneous.—A requested instruction that, even if defendant killed deceased, the jury, if they believed at the time he was so drunk that he did not have the intention of killing deceased, should find him not guilty of wilful murder, was properly refused, because it would, if given, erroneously have told the jury that drunkenness might be considered as showing the absence of any intent to commit the act, which, if believed by them, would compel them to acquit him, and also because it failed to tell them that it would still be their duty in the case predicated to find him guilty of voluntary manslaughter.

7. Homicide—Voluntary Drunkenness May be Considered in Determining Degree.—Though voluntary drunkenness will not excuse or condone a homicide, it may be shown in evidence and considered by the jury in connection with the other evidence in determining whether the killing was done under such circumstances as constituted the act of murder, voluntary or involuntary manslaughter, or merely an accidental killing.

8. Criminal Law—Drunkenness to Extent of Preventing Formation of Specific Intent May be Shown.—Where a specific intent or purpose is a necessary element of an offense, the accused may show he was too drunk to have any intent when he committed the act; and, where there is proof of such drunkenness, an instruction advising the jury of the necessity of considering it as bearing on the question of the defendant's intent in committing the act charged should be given.

9. Homicide—Evidence of Drunkenness Preventing Intent Authorizes Instruction on Manslaughter in Absence of Proof of Express Malice.—In a prosecution for homicide, in which there is no proof of pre-existing, direct malice, but the motive for the killing was robbery, and the malice was therefore implied, the trial court is justified, by evidence on behalf of accused that he was too drunk to form an intention to commit the offense, in giving an instruction on manslaughter.

10. Homicide—Instruction on Accidental Killing Not Authorized by Evidence is Favorable to Accused.—Though the giving of an instruction on accidental killing was error because there was no evidence to show an accident, it was error favorable to accused, of which he cannot complain.

11. Homicide—Evidence Held to Warrant Conviction of Murder and Infliction of Death Penalty.—Uncontradicted evidence that defendant shot and killed deceased, with circumstances tending to show robbery as a motive, held to warrant a conviction of murder, and the infliction of the death penalty, notwithstanding defendant's testimony that at the time he was so drunk he did not know what he was doing.

J. W. HARLAN for appellant.

CHAS. I. DAWSON, Attorney General, for appellee.

Opinion of the Court by Judge Settle—Affirming.

The appellant, Campbell Graham, John Ed. Donegby and Oscar Letcher, all of the negro race, were jointly indicted by the grand jury of Boyle county for the wilful murder of one Mitchell Neal. On their joint trial in the Boyle circuit court all were found guilty of the crime charged in the indictment by verdict of the jury; the punishment inflicted by the verdict upon the defendants, Donegby and Letcher, being, as to each, imprisonment in the penitentiary for life, and that of the appellant Graham at death.

The latter filed a motion and grounds for a new trial, but the motion was overruled, and this ruling followed by the due pronouncement of sentence upon him by the court and the entering of judgment in conformity with the verdict of the jury. Excepting to the overruling of his motion for a new trial, the appellant prayed and was granted an appeal, his prosecution of which brings to us for review the judgment of conviction and several rulings of the trial court of which he complains. The defendants Donegby and Letcher seem to have acquiesced in the verdict, as neither of them moved for a new trial, and neither has appealed from the judgment.

The grounds urged by the appellant for the reversal of the judgment are that the trial court committed reversible error: (1) In overruling his motion for a continuance. (2) In instructing and failing to properly instruct the jury. (3) That the verdict was contrary to law and without support from the evidence.

Each of the above contentions, preceded by another making complaint of the refusal to him by the lower court of a change of venue, was urged as a ground for the new trial moved for by the appellant in that court. It is difficult to understand from the brief of the appellant's counsel whether the trial court's refusal of the change of venue applied for by the appellant is relied on by the latter as error entitling him to a reversal of the judgment, but as it is not fully apparent from the brief that it is not so relied on, we do not feel at liberty to pass it by unnoticed.

The application for the change of venue was made by a joint petition of the appellant and his co-defendants setting forth the grounds therefor, which were substantially to the effect that owing to the odium attached to such a crime as that with which they were charged, the

feeling and prejudice existing in Boyle county against them and the manner in which it had been inflamed by publications made in two named newspapers issued in Danville, the county seat, the petitioners would be unable to obtain a fair trial in that county. All affirmative matter of the petition was controverted by a written response filed by the Commonwealth's attorney. The petition was supported by the joint affidavit of six persons claiming to be residents and housekeepers of Boyle county, but whose occupations or business were not mentioned, all stating that they were acquainted with the state of public opinion in the county, believed the statements of the petition to be true, and that in their opinion the defendants could not have a fair trial in Boyle county because of the prejudice therein against them. On the other hand the statements of the response to the petition were supported by the joint affidavit of five persons, all resident housekeepers of Boyle county, two of whom are farmers and the others merchants, and all testifying that they were acquainted with the state of public opinion in the county, believed the statements of the response of the Commonwealth's attorney to be true, and that they were confident from their acquaintance with its citizenship that the defendants could have a fair trial in Boyle county by a jury "unprejudiced, unbiased and who have not formed or expressed an opinion."

Upon the facts thus presented we strongly incline to the opinion that the more intelligent view of the question at issue was that manifested by the witnesses testifying against the necessity for a change of venue. It has been well settled by numerous decisions of this court that the overruling of a motion for a change of venue, or the selection of the county to which the cause is transferred when a change of venue is granted, will not be reviewed on appeal unless there clearly appears to have been an abuse by the court of its discretion. Toliver v. Comlth., 165 Ky. 312; Heck v. Comlth., 163 Ky. 518; Mansfield v. Comlth., 163 Ky. 488; McElwain v. Comlth., 146 Ky. 104; Truax v. Comlth., 149 Ky. 699; Smith v. Comlth., 148 Ky. 60. As no reason is apparent for holding the ruling of the trial court in refusing the change of venue sought by the appellant an abuse of discretion, such ruling will not be declared error.

The appellant's contention that the trial court erred in overruling his motion for a continuance of the case is without support from the record. The motion was not

supported by the affidavit of the appellant or that of his co-defendants, Donegby and Letcher, who joined in the motion; nor was the continuance asked on account of the absence of witnesses. The only basis for the motion was a joint affidavit made and filed by the three attorneys, each of whom represented one of the three defendants under indictment for the murder charged; and the grounds presented by the affidavit for the continuance were that the defendants were not ready for trial because the attorneys representing them, respectively, had not had sufficient or reasonable time or opportunity to examine the indictment or otherwise prepare their defense, and that they, the attorneys, had not, as requested by one of them, been furnished by the stenographer with a transcript of the evidence introduced on the examining trial of the defendants.

The homicide in question occurred November 26, 1922, early in December. The appellant and his co-defendants were given an examining trial before the county judge, which resulted in their being held over, without bail, to the succeeding term of the Boyle circuit court, which began January 1, 1923, for such action as might be taken by the grand jury in the case. January 2 the grand jury returned the indictment charging them with the crime, and on that day the case, by a duly entered order of the court, was set for trial January 5, which was the fifth day of the term. The appellant was represented both on the examining and circuit court trials by the same single attorney employed and acting in his defense alone; and the latter's presence at and participation in the examining trial as the appellant's counsel must be presumed to have made him familiar with the facts then disclosed by the evidence respecting the commission of the crime charged and that tended to prove the appellant's guilt or innocence thereof. Nor were the opportunities of the latter's counsel for obtaining information necessary in preparing for the defense of his client on the trial later to result in the circuit court, limited to the examining trial and its occurrences; for further opportunities for any additional information needful to such preparation were amply afforded counsel by the three or more weeks of time that intervened between the examining trial and the beginning of the trial in the circuit court, during which there was no obstacle in the way of his visiting and conferring with the appellant at the county jail in regard to his defense on the approaching

trial, or in the way of his interviewing and procuring the attendance of witnesses on his trial whose testimony might prove of value in his behalf; and certainly the interval of three days between the return of the indictment and beginning of the trial gave counsel sufficient time to examine and well understand the full import and meaning of the indictment.

It is apparent from the foregoing facts and circumstances that the claim of the appellant and his counsel that they were unprepared for the trial of the former at the time fixed by the circuit court, or stood in need of the continuance asked for time to make such preparation, is wholly lacking in merit. The same seems to be true of the complaint contained in the affidavit of counsel of the alleged failure of the court stenographer to furnish them, on or before the circuit court trial, with a carbon copy of a transcript of the evidence stenographically taken by her on the examining trial. It was not stated in the joint affidavit that such copy was promised appellant's counsel, or counsel for either of the other defendants by the court stenographer, and if it was desired to refresh his and their recollection, or that of witnesses, as to the evidence previously introduced on the examining trial, that fact was not stated in the affidavit.

The affidavit of the court stenographer, Miss Susan H. Bagby, was filed in resistance of the motion for the continuance, in which it was substantially stated that King Swope, attorney representing a defendant in the indictment in question other than the appellant, was the only counsel who approached her in respect to the furnishing of a transcript of the evidence introduced on the examining trial; and that from his statement to her on the subject, it was her understanding that he would want her to furnish him a carbon copy of the transcript of the evidence taken by her in shorthand on the examining trial for the use of the defendants, if such evidence should be ordered transcribed by the Commonwealth's or county attorney; but that if not so ordered transcribed the copy would not be expected by him. The affidavit further states that the transcribing of the evidence was not directed by the Commonwealth's or county attorney and therefore was never done. Upon the showing of facts made by the above affidavit, which were uncontroverted, no sound reason can be assigned for sustaining the appellant's contention that the failure of the

court stenographer to furnish him a transcript or copy of the evidence heard on the examining trial entitled him to the continuance asked of the trial court. It should be remarked in this connection that although the court below refused the appellant and his co-defendants a continuance of the case when moved for, it then offered to lay it over until about noon of the next day, if it would be of service to them in making further preparation for trial. The offer, however, was declined, but its acceptance might and, probably would, have given time and opportunity for the court stenographer to make, if requested by counsel, a typewritten transcript from her stenographic notes of the evidence introduced on the examining trial, for their use on the trial in the circuit court.

Section 185, Criminal Code, provides that if the defendant is in custody or on bail when the indictment is found "the trial may take place at the same term of the court, at a time to be fixed by the court." The granting or refusing of a continuance in a criminal, as in a civil case, is within the sound discretion of the trial court; and in the absence of an abuse of such discretion by that court its ruling in granting or refusing a continuance will not, on appeal, be declared reversible error by the Court of Appeals. Kelly v. Comlth., 165 Ky. 483; Harris v. Comlth., 163 Ky. 781; May v. Comlth., 153 Ky. 141; Brennon v. Comlth., 169 Ky. 815; McDaniel v. Comlth., 185 Ky. 608. The reasonableness and fairness of this rule is manifest when it is considered that what is a reasonable opportunity to prepare for trial and what time should be given, must necessarily depend on the facts and circumstances of each case and primarily left to the discretion of the trial court, subject to review.

It would be an unnecessary waste of time to discuss *seriatim* the cases of McDowell v. Comlth., 181 Ky. 766; Allen v. Comlth., 168 Ky. 325; Miller v. Comlth., 197 Ky. 703, and others cited for the appellant. It is sufficient to say that they are too unlike the case at bar to give any support to his contention of error in the refusal to him of a continuance, for the showing of facts made in each of them on the defendant's motion for a continuance was such as to clearly manifest a total lack of time or opportunity for the preparation on the part of the defendant or his counsel necessary to secure to the former a fair trial. Hence, the reversal that resulted in each case was unavoidable, because indispensably neces-

sary to the ends of justice and, for that reason, required by the Constitution and laws of the state. None of the reasons requiring the continuance in any of those cases can be found in the case at bar. It is our conclusion that the appellant's claim of unpreparedness for trial was discredited by the showing of facts made by the record; and as the trial court's refusal to him of the continuance was not an abuse of its discretion, its over-ruling of his motion therefor was free of error.

In looking into the appellant's contention regarding the instructions we find no objection to any of those that were give by the trial court, except the one numbered 7, as to which no criticism is offered. His only complaint is as to its refusal to give instruction A, offered by his counsel, and the giving in lieu thereof of instruction 7. The instructions were ten in number and by them the jury were advised of the law bearing on every aspect of the case, including that in respect to self-defense and accidental killing. Instruction A, offered by the appellant and refused by the court, was as follows:

"Although you may believe from the evidence be-yond a reasonable doubt that the defendant, Campbell Graham, shot and killed the decedent Mitchell Neal, and if you further believe from the evidence that the de-fendant, Campbell Graham, at the time and place of so shooting and killing said Neal was so drunk that he did not have the intention of killing the said Neal, then you will find him not guilty of wilful murder as defined in instruction No. 1."

Manifestly the court's rejection of this instruction was authorized, because it would, if given, erroneously have told the jury that the drunkenness of the appellant, if they found he was drunk when he shot the deceased, might be considered by them as showing the absence of any intent to commit the act, which if believed by them would compel them to acquit him of the crime of murder. If this should be conceded to be the law, the instruction would nevertheless be fatally defective, as it failed to tell the jury that though in the state of case predicated they could not find the appellant guilty of murder, it would still be their duty to find him guilty of voluntary manslaughter. No principle is better settled than that voluntary drunkenness will not excuse or condone a hom-icide, but it may be shown in evidence and considered by the jury, in connection with all other evidence in the case, in determining whether the killing was done under

such circumstances as constituted the act murder, voluntary or involuntary manslaughter, or merely an accidental killing. Pash v. Comlth., 146 Ky. 393. In cases, however, where the intent or purpose of the party is a necessary element to constitute the offense, that is, when a felonious intent must be shown to constitute the offense, the accused may show he was too drunk to have any intent at the time he committed the act. And in such cases where there is proof of drunkenness an instruction advising the jury of the necessity of considering it as bearing on the question of the defendant's intent in committing the act constituting the crime charged, should be given. 1 Roberson, Ky. Crim. Law, sec. 32; Terhune v. Comlth., 144 Ky. 370; Kehoe v. Comlth., 149 Ky. 400; Williams v. Comlth., 113 Ky. 654.

While cases of homicide are to be found in which instructions advising the jury of the purpose for which voluntary drunkenness, though not excusing the crime, might be considered by them, it will be discovered that in these cases insanity was the defense relied on. Mathley v. Comlth., 120 Ky. 389; Wright v. Comlth., 24 R. 838. On the other hand, it has been held in numerous cases that in the absence of a plea of insanity, the refusal to give such an instruction was not error. Wilkerson v. Comlth., 88 Ky. 29; Bishop v. Comlth., 22 R. 760; Buckhannon v. Comlth., 86 Ky. 110.

In the case at bar there was no defense of insanity by the appellant. He admitted upon testifying in his own behalf that he must have shot and killed the deceased, but claimed that by reason of his drunken condition at the time he was unconscious of it. The testimony of other witnesses conduced to prove that the appellant shot the deceased, but failed to corroborate him as to the extent of his intoxication. The only motive for the homicide apparent was that of robbery, of which there was abundant evidence. The case in many of its aspects is much like that of Harris v. Comlth., 183 Ky. 542, the principal points of difference between the cases being that in the Harris case the defense attempted to be interposed was both insanity and drunkenness, whereas in the instant case it was only drunkenness. In the Harris case an instruction on voluntary manslaughter was refused and in the instant case it was given. In that case it was held that while evidence of drunkenness on the part of one accused of murder, even where malice is proven, is admissible as a part of the *res gestae* for considera-

tion of the jury in determining whether the punishment should be death or only life imprisonment, but it cannot reduce murder to manslaughter where pre-existing malice toward the deceased is proven, and may have that effect only where there is no proof, but merely a legal presumption of malice.

As in that case there was direct proof of express pre-existing malice, it was held that the failure of the trial court to give an instruction on manslaughter was not error. In the instant case, however, in which such express malice was not proved, but the motive for the killing was shown to be robbery and the malice therefore implied, the giving of the instruction on manslaughter by the trial court was authorized.

Instruction No. 7, relating to accidental killing, should not have been given by the court, as there was no evidence upon which to base it, but as instead of prejudicing the appellant in any substantial right, it gave him an additional ground of defense unauthorized by the evidence and, in consequence, another chance for acquittal, the giving of the instruction was an error of which he cannot complain. With the exception of No. 7, the instructions of the trial court properly gave the jury all the law of the case.

The appellant's final contention that the verdict is unsupported by and flagrantly against the evidence can be sufficiently answered by a brief statement of the material facts shown by the evidence, which are that in the forenoon of the day of the homicide the appellant and his co-defendants, Donegby and Letcher, by appointment met Neal, who was a Tennessee bootlegger, near Danville and purchased of him a quantity of moonshine whiskey for which they paid him the price demanded, amounting to more than $20.00. They rode in an automobile and returned in it to Danville with the whiskey in sacks. In the afternoon they again got together and went in the automobile, as they testified, to another appointment with Neal to get more whiskey, going in the direction of Junction City. They met Neal walking on the railroad near the residence of a Mr. Miller, where, according to the testimony of Donegby and Letcher, appellant got into an altercation with Neal and shot him. Another negro man in view testified that he saw the shooting, but did not know the parties. Appellant testified that he remembered drawing his pistol at the second

meeting with Neal, but that he had no recollection of shooting him or anything else that occurred. He also testified that he was then very drunk and had on the night before and that day drunk more than a quart of moonshine whiskey. The appellant, Donegby and Letcher testified that the three returned to Danville together after the shooting. Neal was found desperately wounded by a resident of the neighborhood, who obtained the assistance of Miller in caring for him. Both testified that Neal's pockets were turned out and his clothing much disarranged, that there was no money on his person, and that he claimed to have been robbed of $27.00 by three negroes, one of whom shot him, and he later made a dying statement to the same effect, which was put in evidence.

It is clear from this evidence that the motive for the killing was the robbery of the victim, and according to the whole of the evidence the appellant fired the shot that caused Neal's death, and this he did not deny though claiming to be unconscious of it. In one of the instructions of the court the jury were properly advised as to the necessity of corroboration of the accomplices. The evidence as a whole left no doubt of the appellant's guilt, and whether his admittedly voluntary drunkenness should have reduced his crime from murder to manslaughter or entitled him to imprisonment for life instead of death, by way of punishment, were questions to be determined by the jury. No reason is shown by the record for disturbing the verdict. It is therefore our painful but imperative duty to approve it. Judgment affirmed. The whole court sitting.