## Shorter v. Commonwealth.

(Decided Jan. 23, 1934.)

FLEM D. SAMPSON and J. M. ROBSION for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appeal is by Walter Shorter from a conviction of the murder of Everett Tuggle, alias Ned Tuggle, for which he has been sentenced to life imprisonment. The parties were friends and neighbors, living on Scratch Ankle branch in Knox county.

We need not stop to detail the events which culminated in the tragedy. It is sufficient to say that both men had been drinking during the day, although the evidence tends to prove that the deceased was probably more intoxicated and supplied most of the liquor, he having exchanged some seed potatoes, onion sets, etc., given him by the Red Cross for his family, for a half gallon of moonshine whisky. The defendant claimed that Tuggle forced him to drink this liquor, and that he dominated and controlled his actions throughout the day, but it would seem that it was not a difficult accomplishment to get him to drink, and Tuggle's power over him is doubtful. There is evidence to the contrary.

The deceased's uncle, William Tuggle, was also drunk, and in the middle of the afternoon he was beaten up over where the deceased was living. The defendant and others say it was done by the deceased; but William and others say it was done by the defendant. Closely following this fight, the deceased and the defendant had a terrific fight, according to the defendant, in which he was cut across the face, knocked down, and kicked about viciously. Tuggle hit him, he testified, on the side of the head, and, when he fell, he struck the back of his head against some steps, and "just turned right blind and crazy and addled." He did not know what he was doing after that, but he testified that, after he got away from Tuggle, with vicious oaths and threats, Tuggle called to those about the house to catch him and bring him back, that he was going to kill him. From that time until that night in jail he knew nothing.

The evidence is that he ran away in a somewhat hysterical condition without heeding those he passed, and resisted those who undertook to restrain him. He ran in one door and out another of his home (where he had a loaded pistol in his room), and thence to the home of Burgess, where he procured a shotgun from the rack and five shells from a bag. He returned at once to the deceased's home, and, as he approached, fired the gun at Tuggle who was standing on the porch. As he got closer, he fired again, and Tuggle was seen to jump or flinch and run inside the house. Shorter shot in the side of the doorway, calling upon him to come out. Tuggle came out, and, while still on the porch, was shot in the right arm. He jumped or fell upon Shorter's back, and the latter fired the gun again while he was in that position and killed Tuggle. Five shots had been fired. During all of this time Tuggle had no weapon and made no effort to harm the defendant, except as indicated, which was apparently to protect himself. Shorter went on away and told several persons here and there that he had killed Tuggle. Some time in the later afternoon he agreed to accompany a friend to Barbourville to surrender.

The evidence of the defendant that he did not know what he was doing because of the blow on the head and drunkenness, or rather because of the unusual character of whisky he had been drinking at the insistence and command of the deceased, of course is not conclusive. There was considerable evidence of circumstances tending to show that he did know what he was doing.

Over vigorous objections of the defendant, the court permitted counsel employed in the prosecution to introduce evidence by several witnesses that the defendant's reputation as of the time of the trial for peace and quiet and for liking liquor was bad. There had not been at that time, nor was there afterward, any attempt on the part of the defendant to establish his reputation in that respect. As has been held in numerous cases, this is prejudicial error. Shell v. Commonwealth, 245 Ky. 223, 53 S. W. (2d) 524; Vanover v. Commonwealth, 246 Ky. 32, 54 S. W. (2d) 375.

Only instructions on murder and insanity were given the jury, except the terms used in the instructions were defined. It is submitted that the evidence required an instruction on voluntary manslaughter. The point is

well taken. It is fundamental that, if there is any evidence tending to, show that a homicide is manslaughter, the accused is entitled to an instruction upon that hypothesis. The subject of manslaughter is treated at length in McHargue v. Commonwealth, 231 Ky. 82, 21 S. W. (2d) 115. As shown therein, if the act of killing was committed under the influence of passion or in heat of blood, produced by reasonable provocation, that is, such as is ordinarily calculated to excite the passion beyond control, and before a reasonable time has elapsed for the passion to cool and reason to resume its habitual control, out of regard for the frailties of human nature, the crime is mitigated and designated as voluntary manslaughter and a lesser penalty inflicted. Whether there has been time for the passion to subside and the better judgment to prevail necessarily depends upon the circumstances of each particular case, and no close rule can be stated. The question of reasonable time is whether, under all the circumstances and conditions connected with the killing the ordinary, average man would have brought himself under control. Campbell v. Commonwealth, 88 Ky. 411, 11 S. W. 290, 21 Am. St. Rep. 348; McCandless v. Commonwealth, 170 Ky. 301, 185 S. W. 1100. If there was such time, in the judgment of the jury, the act must be attributed to malice and not to passion. Although the prosecution's evidence was to the contrary, and tends to establish an unprovoked murder of a defenseless man, according to the defendant's story, without fault he was badly treated, and at the time of the fight had adequate provocation to reduce the degree of his crime. Doubtless the trial court recognized the sufficiency of provocation, but regarded it as too remote to justify the subsequent homicide. So the question is whether the facts justified the court in ruling as a matter of law that there was cooling time before the defendant avenged the wrong that he believed had been done him. It does not definitely appear how far the defendant went for the shotgun nor how long he was gone, but the distance must be short and the time have been brief. Cf. Campbell v. Commonwealth, supra.

Supplementing the foregoing is the evidence of drunkenness or the effects of the liquor. Such evidence is admitted as of a fact which may have affected the mental condition of the accused and to show an absence of malice or intent, thus reducing the offense to man-

slaughter, and authorizing an instruction on that degree of murder. Roberson's Criminal Law, sec. 64; Bishop v. Commonwealth, 109 Ky. 558, 60 S. W. 190, 22 Ky. Law Rep. 1161; Pash v. Commonwealth, 146 Ky. 390, 142 S. W. 700; Graham v. Commonwealth, 200 Ky. 161, 252 S. W. 1012; Blackburn v. Commonwealth, 200 Ky. 638, 255 S. W. 99, 100. But the circumstances of a case may not authorize such an instruction, even though the evidence is properly admitted. Harris v. Commonwealth, 183 Ky. 542, 209 S. W. 509.

We conclude that the evidence was sufficient to require an instruction on voluntary manslaughter.

The evidence as to the fight with William Tuggle either by the deceased or the defendant, or both of them, was led pretty far afield by both sides. It appears that a complete picture of the whole tragedy cannot be had without bringing this in, but too much detail should be avoided in order that the trial of this homicide case does not develop into a trial of that collateral one. May v. Commonwealth, 153 Ky. 141, 154 S. W. 1074.

For the reasons indicated, the judgment is reversed.