## Vance v. Commonwealth.

(Decided June 1, 1934.)

JOE P. TACKETT for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Hayes Vance and Creed Martin were jointly indicted for the murder of John Slone and on his separate trial Vance was convicted and his punishment fixed at confinement in the penitentiary for life. He seeks a reversal of the judgment on the grounds that the verdict is not sustained by the evidence and the instructions are erroneous.

The homicide occurred on Clear creek in Floyd

county on a public road near the home of Charlie Reynolds. Appellant and the deceased had lived in the same neighborhood since childhood and there is no evidence of any difficulty between them prior to the day of the killing. Vance started to the home of his father and met Creed Martin who had a bottle of whisky. They drank the liquor and later met Commodore Brown and John Slone. More liquor was procured and all of them became more or less intoxicated. It appears that ill feeling had existed between Martin and Slone and that they had a difficulty earlier in the day when appellant was not present. Ella Newsome and May Reynolds, stepdaughter and daughter respectively of Charlie Reynolds, were on the porch of the Reynolds home and saw Vance, Martin, Brown, and Slone standing in the road. They were apparently engaged in an argument.

Concerning the conduct of the parties immediately before and at the time of the shooting, Ella Newsome testified:

"Hayes called him back up there, up there in the road from our house. Hayes went back down there. I heard him say something or other. I could not understand what he was saying. They was all bunched up together. Hayes and Creed wanted to go up road, Commodore and John wanted to go down the road. Commodore said to John, 'Get that and let's go.' Something in a paper 'poke.' John picked it up and turned aroun Hayes took one or two steps and shot him."

May Reynolds described the transaction as follows: "They were all standing down there. John and Commodore wanted to go down the road, Creed and Hayes wanted to go up the road. Standing there in a bunch. Commodore said to John, 'Get that and let's go.' John reached and picked it up. Hayes walked two or three steps and shot him."

The "poke" or paper sack referred to by the witnesses contained a jar of liquor. Both of the witnesses testified that Slone had nothing in his hands except the paper sack and was making no demonstration toward appellant when he was shot. In a dying statement Slone said that appellant shot him just as he turned his back and after Creed Martin had said, "Hayes, if you are not going to do what you said you was going to do, give me the gun and I will do it."

Shortly after the shooting appellant told Noah Akers that he shot Slone and that he did not do it accidentally. About thirty minutes after the shooting, he stopped at the home of Perin Holt and while there said, "I shot John Slone. I shot to kill him. I have had it in to kill him for five years."

Appellant claimed that he remembered nothing concerning the shooting and did not remember making any statements to Akers and Holt. He remembered all that occurred until a short time before the shooting, but claimed that he became completely intoxicated and lost consciousness and remembered nothing that happened thereafter until he had been arrested and placed in jail.

The evidence conclusively shows that appellant shot the deceased without provocation and whether his voluntary drunkenness should have reduced his crime from murder to manslaughter was a question to be determined by the jury. He left the scene of the homicide and at a time when he claims he was still unconscious, talked intelligently with two persons concerning the shooting. There was nothing in his conduct tending to show that he did not comprehend what he was doing. His own statement that he had no recollection of anything that occurred is the only testimony to the contrary.

Voluntary drunkenness does not excuse a homicide, but it may be shown in evidence and considered by the jury in determining whether the killing was done under such circumstances as constituted the act murder or voluntary manslaughter. Graham v. Commonwealth, 200 Ky. 161, 252 S. W. 1012. In Pash v. Commonwealth, 146 Ky. 390, 142 S. W. 700, it was held that intoxication will not excuse a homicide, but may be considered in connection with other evidence in determining the degree of the crime. In Wilkerson v. Commonwealth, 88 Ky. 29, 9 S. W. 836, 837, 10 Ky. Law Rep. 656, it was said:

"The evidence showed beyond all question that his condition arose merely from temporary and voluntary drunkenness. It was competent to prove his condition, not because intoxication per se excuses crime, but because it, with other circumstances, may show an absence of malice. It is admissible in evidence merely as one fact bearing upon the existence or non-existence of that deliberate intent essential to the crime of murder."

Under the facts of the instant case the court properly instructed the jury on murder and voluntary manslaughter and left to it for its determination the question as to whether the evidence was sufficient to show the absence of malice on the part of appellant. The jury rejected appellant's theory that he was so drunk he did not know what he was doing when he shot and killed Slone and there was sufficient evidence to sustain its verdict.

The appellant does not complain of the instructions given, but he insists that the court should have given an additional instruction telling the jury that they had the right to consider the intoxicated condition of appellant in determining the degree of the crime. The case of Kehoe v. Commonwealth, 149 Ky. 400, 149 S. W. 818, is relied upon. The defendant was charged with the crime of arson and, as pointed out in the opinion, if his condition of mind from intoxication was such that he was without mental capacity to form and entertain a felonious intent, he was not guilty of any offense and the jury should have been so instructed. In Terhune v. Commonwealth, 144 Ky. 370, 138 S. W. 274, where the defendant was charged with the crime of robbery the same rule was applied, but, as pointed out in the opinion in the case of Blackburn v. Commonwealth, 200 Ky. 638, 255 S. W. 99, the line of cases holding that a concrete instruction on intoxication must be given involved crimes in which the intent or purpose of the accused was an essential element of the offense and where there was no lesser offense of which the accused might have been convicted in event the jury believed the intent or purpose did not exist.

A different ruling has been consistently applied in cases involving murder or other crimes of which there are offenses of lesser degree. In the early case of Shannahan v. Commonwealth, 8 Bush, 463, 8 Am. Rep. 465, it was said:

"We are not to be understood, however, as determining that the fact of drunkenness in a case like this is incompetent testimony before a jury upon the question of malice. Malice, express or implied, must be proven in order to constitute the crime of murder, and in the absence of this proof no conviction can be had for such an offense; and evidence as to the condition of the accused at the

time of the killing, whether drunk or sober, should be permitted to go to the jury, in connection with other facts, in determining the question of malice. What we do adjudge is, that in the trial of a case like this the fact of drunkenness, while it may be a circumstance showing the absence of malice, should not be singled out from the other proof, and the jury told that it mitigates the offense.''

This rule has been followed in Nichols v. Commonwealth, 11 Bush, 575; Buckhannon v. Commonwealth, 86 Ky. 110, 5 S. W. 358, 9 Ky. Law Rep. 411; Bishop v. Commonwealth, 109 Ky. 558, 60 S. W. 190, 22 Ky. Law Rep. 1161; Harris v. Commonwealth, 183 Ky. 542, 209 S. W. 509; Perciful v. Commonwealth, 212 Ky. 673, 279 S. W. 1062; Prather v. Commonwealth, 215 Ky. 714, 287 S. W. 559; Fleenor v. Commonwealth, 221 Ky. 175, 298 S. W. 376; Shorter v. Commonwealth, 252 Ky. 472, 67 S. W. (2d) 695. It follows that the trial court did not err in refusing to single out the fact of drunkenness from the other proof and in failing to give a specific instruction on that subject.

It is suggested that an instruction defining the terms ''malice aforethought'' and ''feloniously'' should have been given, but we have frequently held that while it is better practice to define these terms, failure to do so is not prejudicial error. Hathaway v. Commonwealth, 82 S. W. 400, 26 Ky. Law Rep. 630; Johnson v. Commonwealth, 179 Ky. 40, 200 S. W. 35; Rucker v. Commonwealth, 171 Ky. 276, 188 S. W. 367; Renaker v. Commonwealth, 172 Ky. 714, 189 S. W. 928; Meade v. Commonwealth, 229 Ky. 207, 16 S. W. (2d) 1016.

The judgment is affirmed.