## Triplett v. Commonwealth.

(Decided Jan. 18, 1938.)

JOHN D. W. COLLINS for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Troy Triplett has appealed from a judgment convicting him of the crime of murder, and sentencing him to death. He seeks a reversal of the judgment on two grounds: (1) The punishment is excessive; and (2) the trial court erred in permitting the Commonwealth to introduce evidence in chief after it had closed its case and the defendant had testified.

Appellant shot and killed Dolphy Hall in Letcher county July 16, 1937. Hall was 13 years of age. When

appellant was arraigned, he entered a plea of "not guilty," but, when the case was called for trial, he withdrew this plea and entered a plea of "guilty" to the indictment charging him with the crime of murder; thus leaving to the jury only the duty of fixing his punishment at life imprisonment or death. The Commonwealth, as it had a right to do, introduced evidence showing the circumstances attending the killing in order to enable the jury to fix the punishment intelligently. Cornelison v. Com., 84 Ky. 583, 2 S. W. 235, 8 Ky. Law Rep. 793; Holtman v. Com., 129 Ky. 710, 112 S. W. 851. John Henry Addington, the first witness introduced by the Commonwealth, testified that on the day of the homicide he, Dolphy Hall, and Paul Akeman crossed the mountain to pick huckleberries, but found the berries were not ripe and returned to the foot of the mountain, where they were joined by Troy Triplett, Homer Rose, and Harrison Spurgeon. Triplett was angry because the Hall boy had testified against him in some court proceeding, and, in the presence of the witness, said, in substance, that he was going to kill Hall. Triplett, Hall, and the others walked down the road to a point where a path led across the hill. Hall, Addington, and Akeman turned into the path, and Triplett ran up to them and said: "You are going down the road." They turned and accompanied Triplett and Rose to Brack Quillen's home, where Addington and Akeman turned and started back. Triplett again ran up to them and said: "You are going with us." They continued down the road to the mouth of Webb branch, and then to the home of Arlie Vanover. Addington told Triplett he wanted a drink of water, and Triplett said he would go in the house and get it. While he was absent, Dolphy Hall walked into the house, but Triplett took hold of his arm and led him back to the road. When Triplett gave the water to Addington, he said: "Take a good cold drink, that is all you will need until you get one in Hell." They continued down the road, appellant complaining all the while because Dolphy Hall had testified against him. He threatened several times to kill the Hall boy. Addington testified as follows concerning what Triplett said and did when they reached the place where the killing took place:

"He said 'Damn him I am going to bump him off' and I begged him up there before we started

not to bother him, not to hurt him, and we come on down there a little farther and he said that he didn't aim to leave no evidence and I says to him, 'You wouldn't hurt that little harmless boy would you.' He said 'How old are you son?' and he said 'I am thirteen' and he turned to me and said, 'I was in the pen by the time I was as big as he is.' And he said 'I don't aim to leave any evidence, him nor none of you.' We got on down to the mouth of the branch and he kindly showed Dolphy how to set down, there was a little bank there, just a small bank and Dolphy set down and placed his face down in his hands, and he says 'Let's talk some.' Troy did, and just as he said that he commenced backing backwards and pulling his gun and I commenced backing away up the road, I backed up the road, I backed two or three steps while he was that way and that throwed us some little distance apart, well—

"The Court: Who was it drew the gun and backed up? A. Triplett. Troy Triplett, then he drew his gun and shot the way the little boy was riding the mule the first shot and the mule then wheeled and made a circle around, it hit the mule and as she come around she knocked me over against the plank fence kindly, about six feet and he shot one more shot in the ground under me as I fell or about the time I fell and then he went right back by the back of Dolphy Hall and shot into him three shots in his side next to him in the right side and then by that time I got up there where that fence was an took up through on my hands and feet where I hurt my leg and he shot—about the time he loaded his gun up, he was working the gun about the time I started and then he shot * * * there around about the same place six more shots. Troy told him to set down and motioned to him—And he set down on a little bank and when he set down he put his hands down that way and his head was something like this and saying something, I don't know what it was, and he never did raise up no more that I seen of."

Paul Akeman, a boy of 13 years of age, testified to substantially the same facts except that he did not see the whole transaction, as he ran when the first shot was

fired. The only other witness introduced by the Commonwealth was Jesse Holbrook. He reached the scene of the killing about thirty minutes after it occurred, and found the mule lying in the road and Dolphy Hall on the bank by the side of the road, dead. He described the conditions he found as follows:

"The embankment was about that high above the road (indicating) and looked as if he was hunkered down just like this, about in that position, (indicating) and he was shot through the head and through into the arm, the arm was still under his head and there was five more shots down in his back, as if he was shot right down that way."

The appellant testified in his own behalf, and attempted to make out a case of self-defense, although he had entered a plea of "guilty," which was never withdrawn. His story, in substance, was that Dolphy Hall attacked him with a knife, cut him three or four times, twice on the shoulder, and that he shot in his necessary self-defense.

The argument that the verdict is excessive is based on the claim that the evidence shows appellant had been drinking intoxicating liquor on the day the homicide occurred. It is argued that this fact is sufficient to mitigate the punishment, and that a penalty of life imprisonment only should have been imposed. One difficulty with this argument is that appellant did not claim he was drunk or under the influence of liquor when the homicide was committed. On direct examination, he related conversations that took place just before the shooting and described the actions of the various parties present in minute detail, indicating that he was then in full possession of all his faculties. On cross-examination, he was asked if he had been drinking, and his answer was that he "had a drink or two." Intoxication is not an excuse for crime, and, in a prosecution for homicide, proof of intoxication is admissible only for the purpose of determining whether the accused was capable of entertaining the intent or malice which is an indispensable ingredient of certain grades of the offense. The accused may introduce evidence showing that he was intoxicated at the time the crime was committed, but, in order to be available as a defense, or to mitigate the punishment, the intoxication must be of such degree as to deprive him of the powers of reason

and make him unconscious of what he is doing. Hall v. Com., 258 Ky. 744, 81 S. W. (2d) 404; Tate v. Com., 258 Ky. 685, 80 S. W. (2d) 817; Vance v. Com., 254 Ky. 667, 72 S. W. (2d) 43; Shorter v. Com., 252 Ky. 472, 67 S. W. (2d) 695; Thomas v. Com., 196 Ky. 539, 245 S. W. 164. The evidence in the present case utterly fails to show intoxication of such degree as to warrant mitigation of punishment. On the contrary, it shows that appellant was in full possession of his reasoning faculties when the crime was committed, and that the murder was a ruthless one, committed with premeditation and deliberation. The fact that the jury fixed the appellant's punishment at death rather than life imprisonment does not authorize an inference of passion or prejudice on their part. Lane v. Com., 256 Ky. 78, 75 S. W. (2d) 739; Bryant v. Com., 202 Ky. 427, 259 S. W. 1038.

After the appellant testified in his own behalf, the Commonwealth introduced six witnesses in rebuttal. It is argued that the testimony of these witnesses was substantive evidence, admissible only in chief, and that the court erred in permitting its introduction after the appellant had testified. The appellant had testified that he heard John Henry Addington make a certain statement to Dolphy Hall just before the killing. Addington was introduced in rebuttal, and denied making the statement. His testimony on this point was purely rebutting and admissible. Furthermore, no objection to the question or answer was made. Addington was then asked if appellant's testimony that the deceased walked around the mule and gave appellant some liquor just before the shooting was true, and he answered:

"No sir, he drove Dolphy Hall down the road like driving a hog and made him set down there and went to shooting at us."

The appellant objected to the answer, and the court said:

"Just answer the question."

The answer was not wholly responsive to the question and was not excluded from the jury, but no exception was taken. Paul Akeman and Jesse Holbrook testified in rebuttal, but their testimony was not material. Sara Vanover and her brother, Arlie Vanover, lived near the scene of the tragedy. They testified that appellant came to their home just after the shooting. He was in his

shirt sleeves, was wearing a white shirt, and there was no blood on it as claimed by him in his testimony. He remained in their house about five minutes, but did not tell them he had been cut with a knife. W. H. Caudill, sheriff of Letcher county, examined Dolphy Hall's body shortly after he was shot, and he testified that the bullets entered his back. Appellant had testified that Hall was facing him when the shots were fired. The testimony of all these witnesses was purely rebutting, and it follows that appellant's second contention is wholly without merit.

The duty of determining the degree of punishment to be inflicted, life imprisonment or death, rested upon the jury. After hearing the evidence, they saw proper to inflict the extreme penalty, and we find no reason to disturb their verdict.

The judgment is affirmed.

The court court sitting.