**Michael S. HURLEY, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 13, 1970.

James R. Odell, Jackson W. White, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., Robert W. Willmott, Jr., Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Judge.

Upon a verdict of a jury Michael S. Hurley was adjudged guilty of murder and sentenced to life imprisonment. He appeals. We affirm.

For reversal he claims that the trial court erred in refusing to grant a change of venue, that the verdict was contrary to the weight of the evidence, and that the jury was not properly instructed on the effect of his intoxication.

Hurley and his wife planned to spend November 21, 1967, together but that morning when Mrs. Hurley asked for permission to be absent from work the request was denied. She telephoned her husband and he became exceedingly angry. During the day he consumed a large amount of beer and whiskey. On her arrival home she reprimanded Hurley about his drinking so enraging him that he pushed her into a window and broke it. She departed to make telephone calls and while she was away Hurley went to a nearby grocery where he waved a .38 caliber pistol in a threatening and careless manner and exhibited confusion by his talk and actions. He was described as being very nervous and acting as if he did not know what he

was doing. He left the grocery store and returned to his apartment.

The police were notified of his actions and Lt. John Thomas arrived at the apartment and met Mrs. Hurley outside. At the door the officer asked Hurley about the pistol. Mrs. Hurley saw him holding it behind the door and requested that he surrender the gun to the officer, but instead he turned it on Lt. Thomas, then relieved him of his night stick and weapon. He forced the officer to come inside the house and hold his hands behind his head. Mrs. Hurley testified that her husband asked nonsensical questions of the officer, that he was incoherent, shaking and his eyes were "real glossy".

Deputy Sheriff James Songer arrived and went to a back window where he observed Hurley pointing the pistol at the officer. Hurley saw or heard Songer and told Lt. Thomas that unless Songer left at once, he, Hurley, would kill the officer. Songer went to a cruiser to call for more aid. Hurley ordered his wife to go into the bedroom which she did. Songer and Mrs. Hurley heard a shot. Hurley ran out the front door of the apartment, and was met by Songer who wounded him. Hurley ran back into his apartment, fell to the floor and when his wife reached him he said, "God forgive me" or something similar. The officer was on the floor and blood was splashed all about. He died of gunshot wounds.

■ Contending that a fair trial could not be had in Fayette County, Hurley's counsel moved for a change of venue. KRS 452.220(2). He submitted two affidavits in support of his motion. On hearing of the motion (KRS 452.220(3)) he introduced numerous articles from local newspapers and showed that there had been a great deal of radio and television publicity. This was competent evidence. Carsons v. Com., 243 Ky. 1, 47 S.W.2d 997 (1931). The news media had reported public commendation by the county judge of Songer for apprehending Hurley and condemned

defendant for what he had done. It reported a joint proclamation by the mayor and county judge designating "Lt. Thomas Week" and the creation of a trust fund for the benefit of the deceased officer's family. A substantial sum had been raised in the trust fund, mostly from modest contributions. In the news there appeared posters bearing pictures of the deceased officer's family, and references to Hurley's mental history.

In opposition the Commonwealth called witnesses, some of whom said that they were unaware of the general state of public opinion, but others swore in person and by affidavit that in their opinion appellant could receive a fair and impartial trial. The substance of their statements was that they recalled vaguely the publicity given to the shooting but that they had heard little discussion about it. A year had passed since the shooting occurrence. After an exhaustive hearing the trial court denied the motion.

■ The question of whether venue should be changed addresses itself to the sound discretion of the trial court. The rule was stated in Williams v. Com., 287 Ky. 570, 154 S.W.2d 563, 136 A.L.R. 1398 (1941):

"* * * a trial court is vested with a sound discretion in determining the question upon the evidence and circumstances of each case, and that unless such discretion has been abused to the probable detriment of the accused the appellate court will not disturb the order of the trial court in disposing of the motion. But it will be perceived that such indefinite statement of the law—which we hereby approve as correct—erects no permanent or fixed standard to guide the court in passing upon such questions, but relegates their determination, and the course to be pursued, to the facts and circumstances of each case and to the sound judgment of the court as to whether or not such facts and circumstances reveal a situation of bias, prejudice or other

adverse circumstances whereby there is considerable probability of the accused being unable to obtain a fair and impartial trial within the venue of the pending indictment."

In Nickell v. Com., Ky., 371 S.W.2d 849 (1963), we said:

"The trial judge must determine whether a situation exists which will probably prevent the accused from obtaining a fair and impartial trial within the venue from which removal is sought. In the making of such determination the trial judge has wide discretion in granting or refusing change of venue and his discretion is given great weight because he is present in the county and presumed to know the situation."

Also see Smith v. Com., Ky., 366 S.W.2d 902 (1962) and Kiper v. Com., Ky., 415 S. W.2d 92 (1967). No complaint is made that an impartial jury was not impaneled. We are unable to discern from the record any indication that the trial court abused its discretion in refusing to grant the change of venue. 21 Am.Jur.2d 434, Criminal Law, Section 427.

Appellant contends that all medical testimony indicated that he was suffering from pathological intoxication at the time of the shooting and could not resist the impulse to kill, therefore, the verdict of murder was contrary to the weight of the evidence. He claims that uncontradicted proof revealed that at the time of the shooting he " * * * was suffering from an acute condition known as pathological intoxication. He was, in addition, 'crazy drunk'."

Dr. John H. Parks and Dr. John Wysoki, two competent psychiatrists, testified for appellant. One said that " * * * he was suffering from a mental disorder known as pathological intoxication or acute brain syndrome, an acute condition of short duration brought on by the ingestion of small amounts of alcohol." These physicians had made several psychiatric evaluation tests on Hurley which they said en-abled them to make the diagnosis. The testimony also showed that Hurley had previously been a patient in a mental hospital, that he had made a suicide attempt and on other occasions had made suicidal threats.

One psychiatrist testified that Hurley did not fully understand the nature of his act and "was unable to resist the impulse to kill", that he definitely was psychotic. He concluded that Hurley had suffered from genuine amnesia with respect to the events of the killing and said that this symptom bolstered his opinion of a manifestation of pathological intoxication. The other psychiatrist substantially agreed.

■ The Commonwealth quotes Dr. Parks who stated " * * * I feel that my opinion is that it is probable at the time the act occurred that Michael Hurley had only a partial understanding of the nature of the act * * * ". This physician noted that Hurley " * * * held the gun above the door. He knew enough to keep it out of sight and to, you know, outfox the deceased." The other psychiatrist, who first examined Hurley approximately eight months after the crime, testified that " * * * I came to the opinion that during that time I cannot exclude possibility or probability that he could be suffering from acute brain syndrome at the time of the alleged crime." The Commonwealth argues that the testimony of both physicians showed that " * * * there was a probability that appellant could have been suffering from an acute brain syndrome (pathological intoxication) at the commission of the crime" but that this testimony does not conclusively prove Hurley insane. It notes that the jury could consider acts such as the concealment of the gun, the removal of the officer's weapon and night stick, forcing the officer to stand with his hands behind his head, ordering the deputy away from the window on threat that he would kill the officer and expressions of repentance after the killing. The Commonwealth contends that the verdict which the jury reached that the appellant was not insane

at the time of the commission of the crime was amply supported by the facts. It is our opinion that the testimony of the physicians was somewhat equivocal and that from the evidence it heard the jury was authorized to reach the verdict it rendered. Vance v. Com., 254 Ky. 667, 72 S.W.2d 43 (1934). Cf. Triplett v. Com., 272 Ky. 714, 114 S.W.2d 1108 (1938).

Hurley says that under the instructions given by the court the jury had no alternative but to convict for murder once it rejected appellant's claim of insanity, and that at most the evidence would support only a verdict of voluntary manslaughter. He argues that after instructing on murder, the court told the jury that it should return a verdict of guilty of voluntary manslaughter. " * * * if you believe from the evidence said slaying was done in sudden affray or in sudden heat of passion and upon provocation ordinarily calculated to excite passion beyond control and without previous malice." He concedes that similar instructions were approved by this court in cases including Dodd v. Com., Ky., 255 S.W.2d 464 (1953) and he admits that we have held " * * * that an instruction on voluntary manslaughter is sufficient without any reference to intoxication, if the accused was at the time voluntarily intoxicated. Nelson v. Com., 297 Ky. 189, 179 S.W.2d 445 (1944); Henson v. Com., Ky., 314 S.W.2d 197 (1958)."

He contends that the instruction was inappropriate here because " * * * one suffering from pathological intoxication does not fit comfortably into any of the categories which the instruction embraces."

Appellant next argues that the "sudden affray" instruction was inappropriate here because there was no claim of sudden affray, sudden heat of passion or provocation. Mrs. Hurley testified, "Well, the police just kept telling Mike he hadn't come to hurt him, you know. Mike would say, 'You know you are in my house' * * *." Hurley's actions and expressions indicate provocation at the appearance of Thomas at his home and Songer peering in the window. His ability to "outfox the deceased" as explained by the psychiatrist showed mental ability subject to being provoked.

He also argues that "One left without the power to reason by the temporary onset of mental illness would not recognize a provocation even if it had occurred, and yet, it is clear there was no malice in this case, for malice implies that one has knowingly made the predetermination to do an unlawful act." He argues that the jury was confronted with a situation in which it may have believed that Hurley had acted without malice toward the officer, nevertheless, it was "compelled to return a verdict of murder, since none of the grounds enumerated in the Court's instruction on voluntary manslaughter existed in this instance. This incongruity could be remedied with a specific instruction on intoxication." He cites People v. Conley, 64 Cal.2d 310, 49 Cal.Rptr. 815, 411 P.2d 911 (1966), which required instructions authorizing the jury to find the accused guilty of voluntary manslaughter if he intentionally killed but because of diminished capacity did not act with malice. He also cites People v. Castillo, Cal., 74 Cal.Rptr. 385, 449 P.2d 449 (1969), in which the California court quoted from Conley saying:

" ' * * * a finding of provocation sufficient to reduce murder to manslaughter is not the sole means by which malice can be negated and voluntary manslaughter established. A person who intentionally kills may be incapable of harboring malice aforethought because of a mental disease, defect, or intoxication, and in such case his killing, unless justified or excused, is voluntary manslaughter.' "

In the California case the defendant was suffering from pathological intoxication.

The Commonwealth admits that intoxication may be shown in evidence and considered by the jury in mitigation of the crime or punishment. Richardson v. Com., 284

Ky. 319, 144 S.W.2d 492 (1940). It discusses Vance v. Com., 254 Ky. 667, 72 S.W.2d 43 (1934), which, it says, confronted the court with a strikingly similar set of circumstances. We stated:

"Under the facts of the instant case the court properly instructed the jury on murder and voluntary manslaughter and left to it for its determination the question as to whether the evidence was sufficient to show the absence of malice on the part of appellant. The jury rejected appellant's theory that he was so drunk he did not know what he was doing when he shot and killed Slone and there was sufficient evidence to sustain its verdict."

The prosecution points out that the initial question for the jury was whether Hurley was sane or insane and if it decided that he was sane then it was required to determine if he was so drunk that he didn't know what he was doing. It contends that there was sufficient evidence to show that Hurley was "sufficiently in control of his facilities to commit murder and to realize the import of his actions." We have noted our agreement that such evidence was presented.

The Commonwealth says that a specific instruction on intoxication was not needed and that we have held a defendant's voluntary drunkenness does not entitle him to an acquittal but it may reduce the crime from murder to voluntary manslaughter. See Henson v. Com., Ky., 314 S.W.2d 197 (1958); Chism v. Com., 286 Ky. 314, 150 S.W.2d 694 (1941); Nelson v. Com., 297 Ky. 189, 179 S.W.2d 445 (1944) and Rose v. Com., Ky., 408 S.W.2d 621 (1966).

It seems appropriate to mention that the jury was told it could acquit Hurley if it believed he was of unsound mind. We interpret appellant's argument that pathological intoxication is equivalent to unsoundness of mind. We hold that the instructions given properly submitted the

law of the case. See Terry v. Com., Ky., 371 S.W.2d 862 (1963) and other cases heretofore cited.

The judgment is affirmed.

All concur.