John WOODS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 17, 1972.

William A. Carter, Carrollton, for appellant.

John B. Breckinridge, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

The appellant, John Woods, along with Michael Woods, Albert Miller, John Miller and William Mills, was jointly indicted on four separate charges of storehouse breaking, three of which were supposed to have taken place in Pleasureville, Kentucky. The fourth charge was for breaking and entering a store building belonging to Malcolm James located in Campbellsburg, Kentucky. As best we can ascertain from the record, all of the appellants except John Woods had already pleaded guilty to all or part of these charges at the time the case against John Woods was called. Woods pleaded not guilty on all four indictments. The proceeding presently before this court involves the Campbellsburg break-in only, as the jury found him not guilty on the three charges of breaking and entering in Pleasureville.

The record before us is extremely untidy because the evidence relates to all four charges and in many instances it is difficult to tell whether the witnesses are referring to the Campbellsburg break-in or to one or the other of the break-ins in Pleasureville.

Appellant makes two contentions for reversal of the judgment. First, the trial court abused its discretion by not granting a continuance. Second, the trial court erred in allowing the Henry County Sheriff to testify concerning a telephone conversation of which he was not a party but had information.

We have examined the record as to the first contention and are of the opinion the trial court did not abuse its discretion in not allowing the continuance. Hurley v. Commonwealth, Ky., 451 S.W.2d 838.

In order to understand the second contention it will be necessary to make a partial statement of the facts of the case. In the early morning hours of January 21, 1970, which was a night with the temperature around zero and approximately four inches of snow on the ground, Harold Calvert, a night watchman at Campbellsburg, noticed four men entering the front door of Malcolm James' store on the public square. He immediately called Doug Biggers, the owner of the store next door, who shortly arrived upon the scene with his shotgun. He testified that Biggers got out of his car and went to the corner of the alley, which was next to the store. Along about this time the deputy sheriff, Lin Powell, rode up. Powell stayed out in front of the store, Biggers was in his position in the alley and the night watchman went around back to see if there were any openings from which the suspects might emerge. About this time, an old truck drove by going very slowly. The night watchman testified that he had never seen the truck before. Somewhere in this confusion Malcolm James, the owner of the store, showed up. The truck kept circling the block and finally someone stopped it. The night watchman testified that he did not know the driver. While everybody was arriving and the truck was circling the block, the four men in the store escaped out the back leaving nothing but tracks in the snow. About the time that the four escaped from the store, according to our trusty night watchman, "two big loads of corn came by and they stopped and then there was another car, an old red car, that was right in front of these two trucks and these trucks went out over the hill where they stopped and came back and these two drivers informed me that three fellows had gotten out of their old car just over the hill and took to the field." According to the night watchman, he did not make any attempt to follow the tracks.

Mr. Leland Payton, the sheriff of Henry County, testified that sometime during the night he visited the scene of the break-in and noticed that three people had left tracks leaving the store; that he started to follow the tracks; that they were going in the direction of I–71; and, that he followed them about one-half or three-quarters of a

mile at which point he broke off the pursuit because he got cold and scared. He then got in a cruiser with a patrolman, where it is assumed he got warmth and protection. Concerning this incident, the sheriff testified:

"Q. 20 Why did you not continue following the tracks?

A. I had gotten so cold, to tell you the truth I had gotten scared, and I saw Trooper Chisholm's cruiser patrolling the area and I motioned in front of his light and he come to me and I got in the cruiser and got warm."

The good sheriff and the trooper returned to Campbellsburg where they met Detective Lonnie Leach. They then drove out on the Interstate and observed John Woods, John Miller and Albert Miller standing on the side of the road. The three were there placed under arrest. After questioning the three and on the following day the sheriff returned to Interstate 71 and approximately 200 yards from where the arrest had been effected he found a portion of the merchandise which had been stolen from the store. The sheriff testified that on January 23 he had a conversation with the appellant, John Woods, and that the appellant confessed to him that he was with the boys "on that break-in and the break-in at Pleasureville." The sheriff testified that Detective Lonnie Leach was also present when the confession was made and that subsequent to the confession the appellant accompanied the sheriff to Frankfort, Kentucky, where loot from the Pleasureville break-ins was recovered.

The appellant himself testified that he made no such statement to the sheriff. When queried about what he did say to the sheriff, he answered:

"Q. 9 That's right. Tell the truth.

A. I sent my sister and my wife around to talk to the judge, this was the county judge, I believe and I was in jail with my brother Michael Woods and Albert Miller. The other two had already gotten out, and I told them the only way they would get out was to tell them where the stuff was, and they told me and I sent my wife and my sister around to tell the judge I would take them to the stuff if they would lower our bond we could get out."

Appellant testified that he was home in bed on the night in question; that sometime in the early morning hours pursuant to a telephone call a girl who remained unnamed came by his house and told him that Albert had called saying that his car had broken down and he wanted the appellant to come out on I–71 and pick him up; that appellant, in company with Scott Roberts and Richard Burns, drove out the highway and then he got out of the car and let one of the other boys drive it reportedly to go down the road to find a turn-around and come back. While waiting for the car to return, he and his two companions were arrested. Later he was asked and answered:

"Q. 35 At the time that you received this phone call, did you know that they had been involved in a breaking and entering?

A. No, sir."

The appellant then called the sheriff, Leland Payton, to testify on his behalf. During the course of the examination of the sheriff, appellant's attorney asked him:

"Q. 1 Leland, in your investigation of this breaking and entering at Campbellsburg or Pleasureville, did you learn that a phone call had been made from somebody's dairy barn?

A. Yes, sir.

Q. 2 And which break-in was that?

A. Campbellsburg.

Q. 3 Did you understand or determine who made this phone call?

A. No, sir. I know who was called and who come down here."

Following this testimony, the Commonwealth's attorney proceeded to cross-examine the sheriff concerning the telephone calls as follows:

"Q. 5 You were talking about a phone call, what was that?

A. The next morning John's brother-in-law showed up at Campbellsburg and said that—

MR. CARTER: Now, if your Honor, please, I object to hearsay testimony—

THE COURT: You opened it up, Mr. Carter.

MR. CARTER: Well, I object to the hearsay testimony. I didn't ask for any hearsay.

THE COURT: Don't say what somebody told you.

THE WITNESS: This is what his brother-in-law told me.

MR. CARTER: Objection.

THE COURT: Sustained on hearsay, what somebody told you. What you know or what you saw.

MR. KINSOLVING: They brought it out, a phone call at a barn, anything he can tell the jury to enlighten it, I would like for him to state. I don't know what, it was brought out on direct about a phone call.

THE COURT: You asked him if he remembered a phone call in his investigation. Go ahead and answer it, Mr. Payton.

THE WITNESS: His brother-in-law told me the next morning that John and Mike had called him, or his brother-in-law said John and Mike had called him to come to Campbellsburg and pick them up, that their car had broke down. It was about nine or ten o'clock the next morning when he showed up.

MR. CARTER: Your Honor, I move at this time for a mistrial.

THE COURT: Motion overruled.

(MOTION OVERRULED, to which ruling of the court, the defendant, by counsel, excepted.")

It is appellant's contention that the trial court erroneously admitted the testimony of sheriff Leland Payton concerning the telephone conversation to which he was not a party. He points out quite correctly that this is hearsay testimony. If appellant's rights to a fair trial were seriously prejudiced by permitting its introduction, the judgment should be reversed. See Louisville and Nashville R. R. Co. v. Murphy, 150 Ky. 176, 150 S.W. 79. The question before us is whether the testimony was prejudicial and we are inclined to believe it was not. Appellant was apprehended near the scene of the crime in the company of two others who admittedly helped to commit it. Within 200 yards of the spot where they were apprehended a part of the stolen merchandise was found. The officers who made the arrest testified clearly and unequivocally that appellant admitted participating in the break-in. All evidence reveals a very close connection between appellant and those who admitted the crime. This constituted strong evidence to which the jury no doubt gave great consideration in reaching its verdict of guilty. The testimony to which appellant objects, centering around the telephone call, is confusing and indefinite. First, appellant said he did not receive a telephone call but that a girl came to his house and informed him that she had received a call. But, later on when he was asked the specific question "at the time that *you* received this telephone call did *you* know that they had been involved in a breaking and entering?," he answered, "No, sir," which strongly indicates that the appellant himself did receive a telephone call. The appellant called the sheriff as his witness and interrogated him concerning a telephone call that had been placed from somebody's dairy barn. The sheriff attempted to clear up this matter. For some unknown reason appellant's attorney sud-

denly terminated the examination relative to the telephone call. When the Commonwealth took the sheriff upon cross-examination it pursued the subject and as a result the hearsay testimony entered the record.

Upon the total record the exact significance of the telephone call is so vague and confusing and the testimony relative to it so uncertain that we cannot believe the jury was influenced by it.

Judgment affirmed.

All concur.