## Slone v. Commonwealth.

(Decided May 8, 1931.)

JOHN W. CAUDILL and OSCAR P. BOND for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming.

On July 4, 1929, at about 9:30 p. m., the appellant, Craynor Slone, thrust a knife in the back of Floyd Taylor and severely wounded him while the parties were walk-

728

ing upon a railroad track in returning from church serv
ices held in a mining village in Floyd county. Defend
ant was later indicted by the grand jury of tha
county under section 1166 of our present Statutes, in
which he was charged with maliciously cutting, stabbing
and wounding Floyd Taylor with a knife, which was
deadly weapon, with the intention of killing him. At hi
trial at a subsequent term of court defendant was con
victed and punished by confinement in the penitentiar
for one year, the minimum period fixed by the statute
His motion for a new trial was overruled, and from tha
order, and the judgment following it, he has prosecute
this appeal. A number of supposed, and what counse
insist are weighty, material errors, are argued in his brie
for appellant, consisting of alleged incompetent evidence
objectionable conduct of the commonwealth's attorne
in his interrogation of witnesses, and other matter
occurring at the trial, but none of which is of sufficien
dignity to merit consideration or to require the devotio
of any of our time in considering and answering then
They are so manifestly without merit as to be sel
demonstrative, and a cataloguing of them in this opinio
could serve no useful purpose and would result in a
unnecessary consuming of space.

There is, however, one ground presented in argu
ment for a reversal which we deem of sufficient impor
tance to discuss and determine, and it is: That under th
evidence, the court under its duty to instruct the jury a
to the whole law of the case should have said to it, in su
stance, that if it believed from the evidence that at th
time defendant committed the offense with which he wa
charged and for which he was being tried, he was the
so completely intoxicated that he did not know what h
was doing, or that because of such intoxication he wa
incapable of entertaining a malicious intent, then and
that event he should be acquitted at the hands of th
jury, or, if not completely exonerated, that then it wou
be the duty of the jury to find him guilty of some on
or more of the misdemeanors which the court did subm
to the jury under appropriate instructions and which a
degrees of the felony offense with which defendant wa
charged.

That argument is, of course, based upon some of th
testimony introduced at the trial, and especially th
given by defendant himself, that after he left the chur

on the night in question his mind became completely blank from excessive intoxication, and that he knew nothing thereafter until he awoke in jail the next morning, where he had been placed by the arresting officer after he had committed the cutting and stabbing for which he was indicted. A number of witnesses for the commonwealth, with none to the contrary, testified that the victim left the church with a young lady by the name of Dixon, whose younger sister had formerly been the sweetheart of appellant and with whom he had theretofore associated. But, some time prior thereto there had been some sort of misunderstanding between them, and that Taylor, the victim, after that had been paying more or less attention to that younger sister, although he was not with her that night, nor was she a member of the crowd, nor was there any proof that she attended church that night. With almost complete unanimity the witnesses present testified that appellant, with one Hunter, and perhaps a third person, followed the crowd of which Taylor and Miss Dixon were members and came immediately up to Taylor from the rear, drew his knife, and stabbed him in the back.

The only contradiction of that testimony (disputed by no one present at the trial) was an affidavit that appellant filed for a continuance, in which he stated that Sadie Hunter (nee Dixon), who was unmarried at the time and who was the lady companion of Taylor, if present would say that when Taylor was stabbed she looked around behind them and did not see appellant near him, but did see him behind them "but not close enough to Taylor to have cut him," and, that defendant "was very drunk at this time." He also read as a part of his affidavit what he claimed Charlie Slone would say if present, and which was that he (absent witness) "was right along by the side of Craynor Slone at the time and knows that he did not cut Taylor, he was not close enough to him at the time to cut him." With the possible exception of the statement of the latter absent witness that he "knows that he did not cut Taylor," the testimony of both absent witnesses was but their deductions and conclusions from what they saw after the cutting, and, perhaps, that statement should likewise be so classified, since it is immediately followed by the one saying "he was not close enough to him at the time to cut him." But, even if the statements of the absent witnesses should be accepted as

literally true, they fall far short of establishing defendant's innocence. Betwen the time of the stabbing and the time when the absent witnesses' attention was called to the relative situation or location of defendant to his victim, the former could easily have moved his position and which all the other witnesses say he did. So that, it might well and truthfully be said that all of the testimony in the case, without any contradiction whatever, established defendant's guilt of the crime, unless there existed some legal excuse for his action, which neither the verdict, returned under approprite instruction, nor the testimony in the case shows to be true.

Having said so much with respect to the testimony in the case relating to the actual perpetrator, we will now direct our attention to the complaint supra, with respect to defendant's intoxication, to which he and several other witnesses testified. However, none of them said that he was intoxicated to the extent he claimed, and all of them, except himself, said that he was capable of and did walk erect, and exhibited but slight evidence of intoxication. Other witnesses in testifying upon that subject told of acts and conversations and conduct on the part of defendant throughout some hours immediately prior to the time of the stabbing, and up to within a very short period preceding it, which clearly indicated that he was at least sober enough to know what he was doing and capable of entertaining a fixed purpose and an intention to execute it if he so desired. The law on the subject as announced and approved in this jurisdiction will be found stated in the cases of Shannahan v. Commonwealth, 8 Bush, 463, 8 Am. Rep. 465; Nichols v. Commonwealth, 11 Bush, 575; Carpenter v. Commonwealth, 92 Ky. 452, 18 S. W. 9, 13 Ky. Law Rep. 658; Terhune v. Commonwealth, 144 Ky. 370, 138 S. W. 374; Mearns v. Commonwealth, 164 Ky. 213, 175 S. W. 3554; Hayes v. Commonwealth, 171 Ky. 291, 188 S. W. 415; Blackburn v. Commonwealth, 200 Ky. 638, 255 S. W. 99; Milburn v. Commonwealth, 223 Ky. 188, 3 S. W. (2d) 204; and others cited in those opinions.

Some of the cited cases involved only the question of the right of defendant when on trial for the commission of an offense wherein "malice" or "felonious intent" is an element, to introduce proof of his intoxication for the purpose of reducing his crime to a lower one (and which is a degree of that contained in the indict-

ment) and to thereby mitigate his punishment; while others of them held, as is clearly pointed out in the Blackburn case, that if there are no lower degrees of the offense contained in the indictment of which the defendant on trial might be convicted, then intoxication to such an extent as to destroy intent, if so found by the jury, would serve to exonerate him, and in such case it was the duty of the court to so instruct the jury. But, in all other cases where intoxication has no such defensive effect the fact that defendant was intoxicated at the time he committed the offense should not be singled out and expressly submitted to the jury in an instruction, either for the purpose of acquittal or mitigation of punishment, although it would be proper in that case to admit evidence of intoxication so as to authorize the jury to return the minimum or a mitigated punishment if one is so prescribed by the law.

On the other hand, the Blackburn and Milburn opinions, and others referred to in them, clearly show the correct rule to be (as written by all leading authorities and practically if not all courts) that voluntary drunkenness is ordinarily no excuse for crime, but may reduce the offense from a higher to a lower degree, or may mitigate the punishment within the maximum and minimum prescribed by the law. Therefore, where there are lower degrees of the offense contained in the indictment, some of which do not contain the element of intent or malicious purpose, then the fact of defendant's intoxication should not be singled out in a separate instruction, or the jury told in any manner what effect, if any, it should give to such intoxication, upon the theory that the jury itself may consider and weight such fact and give to it such effect as it sees proper under the instructions submitting to it all degrees of the charged crime, just as it weighs any other evidence in the case. But, if there are no degrees of the offense contained in the indictment, or where there are such degrees, but in then intent is likewise an element, then in such cases the court should instruct the jury, in substance (if the evidence authorized it), that if defendant was so intoxicated that he did not realize what he was doing, or was incapable of entertaining the necessary criminal intent, then he should be acquitted.

An illustration of the first class of cases just referred to is that of Williams v. Commonwealth, 113 Ky. 652, 68

S. W. 871, 24 Ky. Law Rep. 465 (prosecution for false swearing), and in which there are no lower degrees; while an illustration of the latter class of cases (i. e., where there are lower degrees than the one contained in the indictment, but in which lower offenses the same intent is an element) is the Mearns case supra, which was an indictment for grand larceny, and of which the lower offense of petit larceny is a degree, but in which the same unlawful intent is an element. In all other prosecutions in which intent is not an element, or in which there are lower degrees of offenses and in which latter intent is not on element, an instruction on the effect of voluntary intoxication should not be given, but the question as to its effect should be left to the jury under all of the instructions given to it by the court, and in which such lower degrees of the offense contained in the indictment are submitted. In such case, if the jury should find that defendant was guilty of the acts with which he was charged, but because of his degree of intoxication he did not possess the necessary criminal intent, they would be authorized to find him guilty of the lesser degree in which such intent was not an element.

The Blackburn case was one returned under the same section of the statute, the violation of which this instant defendant was accused, the only difference being that the wounding in that case was by shooting the victim with a pistol, while in this case the wounding was done with a knife, but both of which acts are equally denounced by that section and followed by the same prescibed punishment. The court instructed the jury in that (Blackburn) case, as in this one, upon lower degrees of the crime contained in the indictment; but, notwithstanding, the jury convicted the appellant therein of the felony offense and punished him by confinement in the penitentiary for two years and six months. The same complaint and argument was made in that case on behalf of that appellant as is made by counsel for appellant in this one, and in discussing it we said:

"The courts have expressed a variety of views as to the effect of voluntary drunkenness in mitigation of crime. At common law it was no defense whatever, but the rule has been modified in many jurisdictions, where it is held that the fact of voluntary drunkenness is admissible in evidence for the purpose of showing lack of malice or intent. There

are many decisions on the subject in this state, and some confusion has resulted from the application of the rule to the different kinds of cases that have arisen. It has been uniformly held that the fact of drunkenness is admissible in evidence to show absence of malice or intent. In some cases it has been ruled that it is not proper to single out that evidence in an instruction, and in others that an instruction submitting that specific defense should be given.''

Prior cases in this court were then referred to, analyzed, and discussed, in which what we have hereinbefore said was clearly pointed out and approved. The opinion then concluded:

"It will be seen from the foregoing that, where intent or purpose is an element of the crime the fact of drunkenness is admissible [as evidence] to show absence of the intent or purpose, and if the effect of such *evidence* is to lessen the offense, the accused is entitled to an instruction *on the lesser and included offense,* but if the acceptance of the evidence *would not* reduce the offense or tend to establish a *lesser and included offense,* but would result *in the acquittal of the accused,* then a specific instruction as to the legal effect of the drunkenness should be given. In. the case at bar appellant was charged with the offense of shooting with intent to kill. His defense was that he was too drunk to have had such an intention. The court instructed the jury on the original charge, and also on an offense of lesser degree included therein, *of which intent was not a constituent element.* The jury was required to find appellant guilty of the lesser offense, if it believed that he did the shooting, but did not shoot with intent to kill, or, in other words, if it believed that he had established his defense. Furthermore, it was instructed to find the defendant guilty of the lesser offense—that is, shooting in sudden affray—if it had a reasonable doubt as to the degree of the offense that he committed. These instructions included the whole law of the case. The evidence of drunkenness was admissible to show lack of intent and to defeat a conviction under the first instruction; but it constituted no defense to the shooting in sudden affray and without previous malice, on which the jury was instructed solely because of the defense of drunken-

ness. Therefore the court properly refused the specific instruction on drunkenness." (Our emphasis.)

The same holding was approved in the cited Milburn case, and in that opinion the intervening cases between it and the Blackburn case, of Fleenor v. Commonwealth, 221 Ky. 175, 298 S. W. 376, and Lawson v. Commonwealth, 222 Ky. 614, 1 S. W. (2d) 1060, are cited as coinciding with both the Blackburn and Milburn cases, and which is true, as will be seen from a reading of them. In this case, we repeat, the court not only submitted to the jury the felony offense described in the indictment, but also the misdemeanor charge of cutting and stabbing in sudden heat and passion without previous malice, as denounced by section 1242 of our present Statutes, and also submitted the appropriate punishment if the jury found defendant to be guilty of common-law assault and battery, and also permitted the jury under another instruction to convict defendant of the still lower offense of a breach of the peace. Under the state of the law as above outlined, defendant certainly obtained at the hands of the court all the instructions to which he was entitled (but whether more than that we are not called upon to determine), and this argument, which is the only one approaching materiality, is without merit.

Wherefore, perceiving no error prejudicial to defendant's substantial rights, the judgment is affirmed.