## Morris v. Commonwealth.

(Decided June 22, 1934.)

WILLIAMS & DENNEY for appellant.

BAILEY P. WOOTTON, Attorney General, and WILLIAM R. ATTKISSON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Luther Morris appeals from a judgment convicting him of voluntary manslaughter and fixing his punishment at three years confinement in the penitentiary.

The indictment for which he was tried charged him with the crime of voluntary manslaughter committed on the —— day of December, 1933, upon the public highway between Mt. Vernon and Livingston, Ky., in Rockcastle county, Ky., by willfully and feloniously, and in a careless, reckless, and wanton manner, driving against and over Joe Thompson.

The tragedy occurred about 8 o'clock, Saturday evening, December 23, 1933. The accused was upon the occasion in evidence a man of family, some 41 years old, who lived near Parkers Creek, some eight miles south of Livingston, and was, at the time of the commission of the offense charged, employed as foreman of a C. W. A. project at Robinet, on which he operated between Big Hill and Livingston, Ky.

The evidence shows that on the Saturday in evidence, the accused was drinking; that he had drunk some liquor that morning about 10 o'clock; that upon quitting his work about noon he had left camp for Livingston carrying some liquor with him, of which he drank a portion and also some beer when he arrived at Livingston, where he secured his Studebaker roadster and started for Mt. Vernon about 5 o'clock, carrying Spencer Mullins and Ben Griffin with him, and that, arriving there about dark, he indulged in further drinking. It appears his companions left him at Mt. Vernon because of his intoxicated condition, when he drove his car from there to Renfro's Creek, some two or three miles distant, where he was again drinking and driving his car recklessly. About 7:30 p. m. he left Mt. Ver-

non for his home, a short distance south of Livingston. While on his way he stopped at Winstead's camp a few minutes, when he left, driving his roadster in the direction of Livingston. Within a few minutes after the accused left Winstead's camp, Joe Thompson, the deceased, was seen walking south on the left side or shoulder of highway No. 25 in the same direction in which Morris was then driving his car. Mr. Thompson and Emmet Treadway, with whom he was walking, were run down and struck by some one driving an automobile at about 8 o'clock, or but a few minutes after the accused had left Winstead's camp.

Appellant was later found by Charles Carter, deputy sheriff, lying asleep and drunk in his car, about four miles south of where the deceased was struck, run over, and killed.

Mr. Carter, now county judge, testifies that he had some difficulty in arousing the appellant, but, when aroused, that he started his car down over the hill, running it into a ditch, where he ran it for about 100 yards. Carter, with the assistance of local officers, stopped the appellant and brought him back to Mt. Vernon.

The accused testifies that he remembers nothing of what occurred during this time, and was unable to account for his conduct after leaving Winstead's camp; that he did not know the deceased and did not intend to injure any one; and when asked if he denied having hit and run over the deceased he stated, "I don't know, don't deny or admit it, I don't know whether I did or not. If I did I know nothing about it."

However, it is clearly established by the evidence that the accused, Luther Morris, while drunk and driving his car, ran over the deceased, Joe Thompson, and killed him in the manner and on the highway as stated.

The jury, upon the evidence before it and under the instructions of the court given upon its own motion as to both voluntary and involuntary manslaughter, also the reasonable doubt instruction as to the degree of guilt, and also an instruction defining the terms "reckless and wanton" and "carelessly and negligently," returned its verdict finding the defendant guilty and fixing his punishment at three years in the penitentiary, upon which judgment was accordingly entered.

Appellant being refused a new trial upon his motion and grounds filed therefor, he prosecutes this ap-

peal, wherein he chiefly relies for reversal of the judgment upon the ground that the court erred in failing to give a separate instruction on the drunkenness of the appellant with those given upon its own motion, and in refusing to give such instructions offered by appellant.

We are of the opinion that neither of these contentions are meritorious or to be upheld.

The court by its instruction No. 2 told the jury that if they believed from the evidence that the defendant, Luther Morris, operated an automobile in a manner reasonably calculated to endanger the lives of persons then and there on such highway, and that he knew this, or had reasonable grounds so to believe and that while so doing, the defendant recklessly and wantonly ran his automobile against Joe Thompson and killed him, it would find him guilty of voluntary manslaughter.

By instruction No. 3, it directed the jury that if it did not believe from the evidence to the exclusion of a reasonable doubt that the defendant recklessly or wantonly ran his automobile against or upon the deceased as he set out in the second instruction, yet should believe to the exclusion of a reasonable doubt that he did recklessly and negligently run his machine against Joe Thompson and kill him or that at such time and place he operated his car at a greater speed than reasonable and proper, having due regard to the traffic and use of the highway, or so as to endanger the life or limbs or injure the property of any person, and while so driving, if he did, his automobile struck Joe Thompson and killed him, that in either of such events it should find him guilty of involuntary manslaughter and fix his punishment at a fine in any sum or imprisonment in the county jail for any period, or it might both so fine and imprison.

The appellant contends that these instructions were inapplicable to the facts of this case, for the reason that the deciding and material issue of intoxication was not presented by them, and that it was not present in the case of Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164, from which they were taken; he argues that the law does not reveal a solitary case where one has been convicted of a crime unless the intent was present or the defendant's conduct was so reckless and wanton as to be felonious; that such doctrine is predicated on the theory that the accused was a sane and sober man, with

at least partial possession of his mental faculties. Counsel insists that the separate instruction offered by him as to the appellant's drunkenness should have been given, and argues to the effect that, if the accused was at the time he struck and killed the deceased, Joe Thompson, completely intoxicated, he did not know what he was doing and was thereby incapable of entertaining a malicious intent and that the defendant should in such instance be acquitted, and that the acquired intent, he argues, cannot be formed by an inactive mind or reckless or wanton conduct be felonious unless some affirmative act is done.

This argument is well but adversely answered in the words of the court's opinion delivered in the case of King v. Commonwealth, 253 Ky. 775, 70 S. W. (2d) 667, 668, where there was before the court the similar situation of reckless and wanton driving by the accused, shown by the evidence to have been drinking or then intoxicated. The court said:

"It is well settled that if one operates an automobile upon the highway in such a manner as is likely to injure others using the highway and recklessly, wantonly, and with gross carelessness strikes and kills another, he is guilty of voluntary manslaughter. Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164. This principle is based upon the theory that a man intends the natural consequences of his act and that he is aware or ought to be aware of what will result from the reckless or grossly careless operation of an automobile, which becomes a dangerous instrumentality under such circumstances, although he actually has no intention to kill."

Under the evidence in the instant case it is shown that the accused was, while drunk, driving his car in a wanton and careless manner at a high rate of speed on the left side of the road, even over to its left shoulder, where he there struck and killed the deceased, Thompson,

Since the court by its instructions as given told the jury that the offense of voluntary manslaughter might be committed by the accused not alone by his intentional commission of the homicide, but also by the defendant's recklessly or wantonly running his automobile against Joe Thompson and killing him, and also instructed the jury in like manner as to involuntary manslaughter and

as to the circumstances under which it was necessary to prove an intention to commit the homicidal act, as was laid down as proper in the case of Slone v. Commonwealth, 238 Ky. 727, 38 S. W. (2d) 709, 711, we conclude that no separate instruction on drunkenness was either here required or proper.

In the Slone Case, supra, written for the court by Judge Thomas, it is said:

"Some of the cited cases involved only the question of the right of defendant when on trial for the commission of an offense wherein 'malice' or 'felonious intent' is an element, to introduce proof of his intoxication for the purpose of reducing his crime to a lower one [and which is a degree of that contained in the indictment] and to thereby mitigate his punishment; while others of them held, as is clearly pointed out in the Blackburn Case [200 Ky. 638, 255 S. W. 99], that if there are no lower degrees of the offense contained in the indictment of which the defendant on trial might be convicted, then intoxication to such an extent as to destroy intent, if so found by jury, would serve to exonerate him, and in such case it was the duty of the court to so instruct the jury. But, in all other cases where intoxication has no such defensive effect the fact that defendant was intoxicated at the time he committed the offense should not be singled out and expressly submitted to the jury in an instruction, either for the purpose of acquittal or mitigation of punishment, although it would be proper in that case to admit evidence of intoxication so as to authorize the jury to return the minimum or a mitigated punishment if one is so prescribed by the law.

"On the other hand, the Blackburn and Milburn [223 Ky. 188, 3 S. W. (2d) 204] opinions, and others referred to in them, clearly show the correct rule to be [as written by all leading authorities and practically if not all courts] that voluntary drunkenness is ordinarily no excuse for crime, but may reduce the offense from a higher to a lower degree, or may mitigate the punishment within the maximum and minimum prescribed by the law. Therefore, where there are lower degrees of the offense contained in the indictment, some of which do not contain the element of intent or malicious purpose,

then the fact of defendant's intoxication should not be singled out in a separate instruction, or the jury told in any manner what effect, if any, it should give to such intoxication, upon the theory that the jury itself may consider and weigh such fact and give to it such effect as it sees proper under the instructions submitting to it all degrees of the charged crime, just as it weighs any other evidence in the case.''

See, also, to like effect and for a further discussion of this question, the late case of Hayes Vance v. Com., 254 Ky. 667, — S. W. (2d) — , decided June 1, 1934, wherein a review of the applicable authorities is made.

In the light of the doctrine and legal principle as set out in these cited and quoted cases, being clearly applicable to and controlling of the questions presented by appellant, we, upon the authority of them, conclude that the instructions as given by the learned trial court were proper and that appellant's contention that it erred in not giving a separate instruction on drunkenness is not to be sustained.

Judgment affirmed.