# Richardson v. Commonwealth.

Oct. 4, 1940.

Joe L. Price, Judge.

McMurry & Reed for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Appellant was convicted of the murder of Tom McNary and sentenced to death. The homicide, which occurred on Sunday, February 5, 1939, in the city of Paducah, was wholly unprovoked, and the only excuse offered by appellant for his act is that he was so drunk at the time that he did not know what he was doing. Both the killer and his victim were negroes, the latter being about sixty-three years of age. Appellant approached him while he was sitting on a low stone ledge, bordering upon the sidewalk by a grocery store on a corner, placed a hand on his head, and shot him after a few remarks had passed between them and the deceased had arisen and informed appellant that he did not feel like playing. He was wholly unarmed, and according to appellant, who disclaimed any recollection of the shooting and of the events immediately preceding or following it, their relationship had always been friendly.

With commendable zeal his counsel, who were appointed to defend him, have prosecuted this appeal, urging as grounds for reversal that the instructions were erroneous and did not properly submit to the jury appellant's defense, that the court committed prejudicial error in permitting the jury to separate, that negroes had been arbitrarily excluded from grand and petit jury service in McCracken county solely because of their color, and that the verdict was flagrantly against the weight of the evidence. We shall dispose of these grounds in the order mentioned.

1. The court in unobjectionable terms instructed the jury upon murder, manslaughter, self-defense and

reasonable doubt and by a separate instruction told the jury that:

"Voluntary drunkenness is no excuse for crime, but the facts of the case introduced in evidence on the ground of defendant's being drunk at the time of the commission of the offense, of his mental condition by reason thereof, though voluntary, should be considered by the jury on the question of his motive and in determining whether he was acting maliciously, or without malice, and in sudden heat and passion."

It is argued by appellant that an instruction on manslaughter in the usual form was unwarranted in view of the evidence, and that a separate instruction should have been given advising the jury in effect that if at the time of the killing the appellant was so drunk that he had lost his reason or his ability to distinguish between right and wrong, it should find him guilty of voluntary manslaughter.

In our opinion the court properly instructed the jury on manslaughter and erred in appellant's favor in giving any instruction whatsoever on the subject of drunkenness. While there is apparent conflict between some of our previous opinions on the effect of drunkenness as a defense to a criminal prosecution, the subject was thoroughly discussed in the case of Blackburn v. Commonwealth, 200 Ky. 638, 255 S. W. 99, and the rule announced that where intent or purpose is an element of the crime charged, evidence of drunkenness is admissible to show absence of intent or purpose, and if the effect of such evidence is to lessen the offense, the accused is entitled to an instruction on the lesser and included offense; but if the acceptance of the evidence would not reduce the offense or tend to establish a lesser and included offense, but would result in the acquittal of the accused, then a specific instruction on the legal effect of the drunkenness should be given. Or, as stated in the case of Slone v. Commonwealth, 238 Ky. 727, 38 S. W. (2d) 709, 711, which quoted the rule as announced in the Blackburn case:

"Voluntary drunkenness is ordinarily no excuse for crime, but may reduce the offense from a higher to a lower degree, or may mitigate the punishment within the maximum and minimum prescribed by the law. Therefore, where there are lower degrees of

the offense contained in the indictment, some of which do not contain the element of intent or malicious purpose, then the fact of defendant's intoxication should not be singled out in a separate instruction, or the jury told in any manner what effect, if any, it should give to such intoxication, upon the theory that the jury itself may consider and weigh such fact and give to it such effect as it sees proper under the instructions submitting to it all degrees of the charged crime, just as it weighs any other evidence in the case. But, if there are no degrees of the offense contained in the indictment, or where there are such degrees, but in them intent is likewise an element, then in such cases the court should instruct the jury, in substance (if the evidence authorized it), that if defendant was so intoxicated that he did not realize what he was doing, or was incapable of entertaining the necessary criminal intent, then he should be acquitted."

See also Shorter v. Commonwealth, 252 Ky. 472, 67 S. W. (2d) 695 and Vance v. Commonwealth, 254 Ky. 667, 72 S. W. (2d) 43, which cite the Blackburn case, and the case of Morris v. Commonwealth, 255 Ky. 276, 73 S. W. (2d) 1, which quotes with approval the excerpts from the opinion rendered in the Blackburn case set forth in the opinion in the Slone case.

Here, to paraphrase the summation in the Blackburn case, the appellant was indicted for the crime of murder and his defense was that he was too drunk to entertain an intent to kill, or, in fact, to know what he was doing. The court instructed the jury on the original charge and also on the offense of manslaughter, included therein, of which previously existing intent was not a constituent element. The jury was required to find the appellant guilty of the lesser offense, if it believed that he had killed the deceased in sudden heat and passion and without previous malice. Furthermore, it was instructed to find appellant guilty of the lesser offense, if it had reasonable doubt as to the degree of the offense which he had committed. These instructions included the whole law of the case. The evidence of drunkenness was permissible to show lack of intent and to defeat a conviction under the first instruction, but it constituted no defense to the killing of deceased in sudden affray and without previous malice.

2. The second ground for reversal urged by appellant, namely, that the court permitted the jury to separate on the night of the first day of the trial, in violation of the provisions of Section 244, Criminal Code of Practice, is wholly without merit for the reason that the record shows that the jury was permitted to separate "by agreement of the parties." Appellant's counsel admit the agreement, but claim that they had no right to waive the provisions of the section of the code referred to. They suggest that it was improper for them to have been put to the alternative of agreeing or objecting to the separation, since an objection from them might have prejudiced the jury. However, there is nothing in the record to show that the court put them to an election, and it is the well-settled rule in this state that the failure of a defendant to object to the separation of a jury in a capital case constitutes a waiver of his right to have the jurors kept together. Heck v. Commonwealth, 163 Ky. 518, 174 S. W. 19; Wilson v. Commonwealth, 243 Ky. 333, 48 S. W. (2d) 3.

3. The fact that negroes were excluded from the grand jury which indicted the appellant would have been a ground for quashing the indictment, and if, upon a showing of the fact, the trial court had overruled a motion to set aside the indictment and tried the appellant, it would have been this court's duty to reverse the judgment of conviction. It was so decided in the case of Hale v. Commonwealth, 303 U. S. 613, 58 S. Ct. 753, 82 L. Ed. 1050. But in that case, as well as in all the other decisions of the Supreme Court referred to therein, it appears that the defendant in the prosecution moved a setting aside of the indictment, or raised the objection in some other appropriate manner prior to a trial thereon.

Section 157, Kentucky Criminal Code of Practice, provides that upon the arraignment, or upon the call of the indictment for trial, if there be no arraignment, the defendant must either move to set aside the indictment or plead thereto. And that section of the code but emphasizes the universally accepted rule, that a defendant may not plead not guilty to the facts charged in the indictment and, after taking his chances with the trial jury, be heard to object to the qualification or disqualification of certain persons serving upon the jury or excluded therefrom. The rule applies "with additional

force where the objection is not to the disqualification of jurors who are actually sworn upon the panel, but to the exclusion, or excuse, of persons from serving on the panel." United States v. Gale, 109 U. S. 65, 3 S. Ct. 1, 4, 27 L. Ed. 857. See also Ex parte Wilson, 140 U. S. 575, 11 S. Ct. 870, 35 L. Ed. 513; Haggard v. Commonwealth, 79 Ky. 366, 2 Ky. Law Rep. 356; Salyers v. Commonwealth, 274 Ky. 284, 118 S. W. (2d) 208; Am. Jur., vol. 14, Sections 265, 266, page 947.

The same general principles are applicable to appellant's objection based upon the exclusion of negroes from the petit jury which tried him. Section 199, Criminal Code of Practice, authorizes a challenge to the panel where there has been a substantial irregularity in the selection, summoning, or drawing of the trial jurors and Section 200, Criminal Code of Practice, prescribes the course to be pursued by the trial judge, if the challenge be sustained, in securing another jury. As said in the case of Haggard v. Commonwealth, supra, where the identical objection relied on in the case at bar was attempted to be raised by habeas corpus after conviction:

"The appellant did not move to set aside the indictment. And according to the principles laid down in the case of Commonwealth v. Smith et al., 10 Bush 476, he waived any error that may have existed, and which could have been reached by such motion.

"He might also, by challenging the panel, have caused the exclusion of all the standing jurors from the trial jury under the provisions of Sections 199 and 200 of the Criminal Code, for the same cause he now assigns for a discharge from his conviction.

"But he did not avail himself of any of these provisions of law, which would have afforded him ample relief, had he but sought it, and he must, like any other citizen, be deemed to have waived the error in the formation of the grand and petit juries."

In the case at bar, appellant's objection to the exclusion of negroes from the grand and petit juries was raised for the first time in his motion for a new trial, supported by his affidavit, reciting that no negroes had served on the grand jury which indicted him or upon the petit jury which convicted him; that negroes were arbi-

trarily excluded from service on both juries, in violation of his constitutional rights, because of their race and color; that for more than thirty years, negroes had been arbitrarily and systematically excluded from jury service in McCracken County for the same reason; and that no negro had served or been summoned for service on a grand or petit jury in McCracken County during the past thirty years.

Assuming, but without deciding, that appellant's uncontroverted affidavit was sufficient to establish the facts therein related, notwithstanding the lack of details or corroborative evidence, we are nevertheless compelled to hold that his objections, based thereon, came too late to be available to him as a ground for a new trial.

4. The contention that the verdict is flagrantly against the weight of the evidence is predicated upon the theory that voluntary drunkenness, in the absence of proven malice, should operate to reduce murder to man slaughter, in the same manner that sudden heat and passion, without malice, in the accused operates to reduce the greater crime to the lesser; and that since appellant killed his friend without provocation and testified that he was so drunk that he did not know what he was doing, he was guilty of voluntary manslaughter, but not murder. But besides the deleterious results which would flow from the establishment of such a precedent, the argument overlooks the fact that appellant alone testified to his complete intoxication and that the record contains evidence indicating that he was not so drunk as he claims to have been—for example, the testimony of Ella Johnson that following the killing, appellant came to the back window of her house and told her that he had killed "Uncle Tom" and that he, upon being refused admission, asked her to keep his pistol for him and inquired which way he could go. Furthermore, it is in evidence that prior to the killing, when appellant first came upon the scene, he exclaimed, "All you G—— d—— fellows get off this corner here; there is going to be hell directly." Thus it is apparent that the jury was amply justified in convicting appellant of murder and inflicting the severest penalty known to law.

Judgment affirmed.

Whole Court sitting, except Judge Perry.