## Rice v. Commonwealth.

Oct. 31, 1941.

Liggett B. Armstrong for appellant.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Late in the night of March 19, 1940, William True was shot in the restaurant of James Cleri on Wilkerson Street in Frankfort, Kentucky. The wounding bullet cut his spinal cord and paralyzed him from his waist down, which condition has not improved and perhaps never will. The appellant, Virgil Rice, was indicted by the Franklin county grand jury, in which he was accused of the offense denounced by Section 1166 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, and which is the wilful and malicious shooting of another with the intent to kill, but from which the victim did not die. Cases are cited in the notes to the section referred to wherein it was held that the offense denounced by Section 1242 of the same Statutes, making it a misdemeanor to commit the same acts without intent to kill, was a degree of the offense described in Section 1166. At the trial of the indictment herein the court instructed the jury under both statutes. It returned a verdict convicting appellant of the felony charge and punished him by confinement in the penitentiary for ten years. His motion for a new trial was overruled, and from that order, and the judgment pronounced on the verdict, he prosecutes this appeal, urging as fatal errors at the trial (1) that the verdict is not sustained by the evidence, (2) failure of the court to give a specific instruction on claimed drunkenness of appellant, and (3) error in re-

jecting testimony offered by defendant—each of which will be determined in the order named.

1. Error (1) calls for a brief statement of the testimony. Appellant resided, at the time, in Stamping Ground, in Scott County, Kentucky. He came to Frankfort about 2 o'clock P. M., on the day the offense was committed and spent the most of his time in that portion of Frankfort known as "The Craw." Near 12 o'clock on the night of the day referred to, appellant was in the restaurant of James Cleri, which was located in that part of the city, and had finished eating a hamburger and some fish. About that time the prosecuting witness, William True, and his cousin, Leo True, entered the building. The appellant had obtained a pistol of .38 calibre after arriving in Frankfort. Leo True also had a pistol of the same size, but it is claimed that it fired a longer cartridge; however, it is uncontradictedly proven that he had procured his pistol on the same evening, but it was not loaded on the occasion of the shooting of the prosecuting witness. A sort of controversy arose between one or both of the Trues and one Campbell, on account of which, as well as the lateness of the hour, the proprietor of the restaurant ordered all inmates to get out, since he intended to close up for the night. But Leo True and appellant objected thereto and at the command of the former the proprietor of the restaurant got behind the counter therein and did not open its outside door as he had started to do. At that time appellant had stationed himself near the door and on the right side going out; whilst the wounded prosecuting witness proceeded towards the door with the intention of opening it and departing therefrom as Cleri had requested. Just before he reached the door a shot was fired from his rear, inflicting the described wound upon him. Almost instantly thereafter he fell to the floor and was later taken to the hospital, with eventual recovery but with the resulting consequence related supra.

One witness for the prosecution testified directly that he saw appellant fire the shot that wounded the prosecuting witness. Others said that the only two persons who had pistols within the building were Leo True and appellant, and that he (witness) was looking at Leo True and that he did not and could not do the shooting with his unloaded pistol. Furthermore, after the shooting, and on the next day, appellant was arrested

by the officers and he stated to both of them that he did do the shooting of the prosecuting witness. Also appellant immediately after the shooting—and the crouching of the prosecuting witness on the floor as a result therefrom—ran from the building and later obtained a taxicab and drove to the home of his sister where, as we gather from the record, he was residing in Stamping Ground. He testified in his own behalf that he did not know whether he did the shooting or not because he was too drunk to remember, although he remembered and testified to facts immediately preceding the shooting— the same as was testified to by other witnesses—as well as those immediately following the shooting, even to having seen the prosecuting witness fall to the floor.

It would thus appear that the mind of appellant was normally acting up to immediately before the shooting and immediately thereafter, but for an instantaneous intervening period his mind went blank. The tale so told paralyzes credulity as completely as the shooting did to the body of the prosecuting witness. Moreover, the Commonwealth's witnesses who were present on the occasion did not testify to a degree of intoxication as was calculated to destroy intention, purpose and design on his part, although he was under the influence of liquor. There are other facts and circumstances in the case clearly indicating that appellant was guilty of firing the shot that wounded the prosecuting witness, and which was established beyond a reasonable doubt and his criminal act was, no doubt, in fulfillment of an undenied statement which he made earlier in the night that he intended to kill or shoot somebody before morning. Moreover, appellant is shown to have emphasized his protest against anyone leaving the building by saying: "Nobody is going to leave this damn building," and it is highly probable that he shot his victim because the latter was in the act of violating that emphasized proclamation. It was proven by appellant himself that he had been twice convicted previously of a felony. In view of the condition of the record it is clear that this ground is without merit.

2. It would be impossible to find two records more completely parallel in *every* respect than this one, and the one in the case of Blackburn v. Commonwealth, 200 Ky. 638, 255 S. W. 99. In that case the appellant was indicted under the *same* section of the statute for the

commission of the *same* offense therein denounced, and with which the instant appellant is accused. The court instructed on the felony and the misdemeanor in Section 1242 as a degree of the felony charge contained in the indictment. The convicted defendant therein urged as a reversible error that the court did not give an instruction whereby he should be acquitted if the jury found that he was so drunk as to be incapable of entertaining a felonious intent and purpose in the commission of the crime for which he was convicted. That opinion takes up and analyzes former ones of this court, pointing out the facts in ecah and the legal effect thereof, and concludes by holding that if the particular crime with which the defendant is accused may be reduced from a felony to a misdemeanor of a lower degree, then the court should *admit* evidence of drunkenness so as to enable the jury to determine whether the defendant on trial committed the deed or crime charged with the necessary felonious intent; or whether or not the extent of his intoxication removed such intent and reduced the crime to the misdemeanor; but that in such cases no *specific* instruction on intoxication or its effect should be given. When such an instruction should be given with directions to acquit the defendant on trial—if he was thereby bereft of intent and purpose because of his intoxication, and where there are degrees of such crime reducing the charge to a misdemeanor—is also discussed in the Blackburn opinion, but this case is not one of them.

The identical question was again considered by us with a like conclusion in the case of Richardson v. Commonwealth, 284 Ky. 319, 144 S. W. (2d) 492, which referred to the Blackburn opinion and others of like tenor, and the last case where the same conclusion was reached under the same facts is Chism v. Commonwealth, 286 Ky. 314, 150 S. W. (2d) 694. Those cases, therefore, clearly hold that the contention made in support of error (2) is likewise without merit.

3. We have read and re-read the record, and we find therein no support for error (3). It is rested on the testimony of Drs. J. G. Leaser and Thomas Leonard, the latter of whom made X-ray photographs to locate the bullet that penetrated the body of the prosecuting witness. Counsel for appellant desired to prove by those witnesses that the obstruction which the X-ray photographs disclosed was longer than the character of

bullet which appellant's pistol fired and was capable of firing; but neither of those witnesses testified positively that what the photographs exhibited was even a bullet, and Dr. Leasnor said that he could not himself tell whether the obstruction shown by the photograph differed in length from that fired by a long or a short cartridge. Dr. Leonard testified that he might be able to do that, but in order to do so it would require an examination of the prosecuting witness at the hospital, and which ended the matter without such an experiment being made, since there was no further insistence upon it. However, the testimony at most bore only upon the issue as to whether or not appellant fired the shot that wounded the prosecuting witness, and we have seen that the proof thoroughly established that fact beyond a reasonable doubt.

The record, therefore, is clear of any reversible error, and for which reason the judgment is affirmed.